**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MICHAEL SCIORTINO and JOSH SAWYER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DRINK LMNT, Inc.,

Defendant.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Case No. 25-cv-3126

Plaintiffs Michael Sciortino and Josh Sawyer, on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant Drink LMNT, Inc. ("Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and the investigation of their counsel, and on information and belief as to all other allegations:

**TABLE OF CONTENTS**

NATURE OF THE ACTION ........ 1
THE PARTIES ........ 3
JURISDICTION AND VENUE ........ 4
FACTUAL ALLEGATIONS ........ 5
CLASS ACTION ALLEGATIONS ........ 17
FIRST CAUSE OF ACTION ........ 21
SECOND CAUSE OF ACTION ........ 23
PRAYER FOR RELIEF ........ 25

## NATURE OF THE ACTION

1. Defendant manufactures, markets, and sells LMNT electrolyte drink mixes ("LMNT"), targeting "health-seeking consumers looking to support their electrolyte needs."

2. Defendant aggressively promotes LMNT as "keto" and "paleo" friendly and aligned with a "whole foods" diet—promises that resonate with consumers seeking clean, minimally processed nutritional supplements.

3. Defendant also advertises LMNT with taglines like "Everything you need and nothing you don't" and claims that its products contain "no dodgy ingredients," suggesting a formulation consisting solely of essential electrolytes and free from highly processed additives.

4. Contrary to these representations, LMNT contains between 300 and 450 milligrams per serving of maltodextrin—a highly processed food additive commonly used as a sweetener or filler in processed foods.

5. Maltodextrin is neither a whole-food ingredient nor compatible with ketogenic (keto) and paleolithic (paleo) dietary standards.

6. Maltodextrin has a glycemic index higher than table sugar—as high as 110—and can quickly raise blood sugar and insulin levels, making it particularly unsuitable for those on a keto diet.

7. Maltodextrin is also highly processed—requiring industrial production by enzymatic or acid hydrolysis of starch, followed by purification and spray drying—making maltodextrin incompatible with whole-food and paleo diets, which emphasize minimally processed foods in their natural state.

8. Further, recent research highlights that "consumption of the food additive maltodextrin, incorporated into many processed foods, leads to the promotion of intestinal inflammation" and could therefore be a "risk factor for chronic inflammatory diseases"[1]—concerns that are particularly acute for consumers seeking to maintain a clean, whole-food diet.

9. Defendant does not disclose the presence of maltodextrin on LMNT's packaging, but instead conceals maltodextrin under the generic ingredient listing of "natural flavors," all while emphasizing LMNT's three ostensibly key ingredients: sodium (1000 mg), potassium (200 mg), and magnesium (60 mg):




10. In fact, unbeknownst to consumers, the amount of maltodextrin in LMNT (300 to 450 mg) actually exceeds the amount of potassium and magnesium *combined*.

[1] https://pmc.ncbi.nlm.nih.gov/articles/PMC6409436/

11. By marketing LMNT as consistent with a whole-food diet, as "paleo-keto friendly," and as free from "dodgy ingredients," Defendant creates the impression that LMNT is a clean, whole-food nutritional supplement free from highly processed food additives, like maltodextrin. Taken together, Defendant's deceptive representations about LMNT are likely to mislead reasonable consumers acting reasonably under the circumstances.

12. Defendant's false and misleading statements also artificially raise the price of LMNT. As a result, Plaintiffs and the Class paid a price premium when purchasing LMNT, paying more for the electrolyte drink mixes than they otherwise would have paid—or paying for a product they would not have purchased at all—had they known the truth.

13. Accordingly, Plaintiffs and the Class seek monetary and injunctive relief against Defendant for violating New York General Business Law ("GBL") §§ 349–50.

**THE PARTIES**

**14.** Plaintiff Michael Sciortino is a New York resident. He purchased LMNT from Defendant's website in July 2024. Plaintiff reasonably relied on Defendant's false and misleading advertisements and would not have purchased LMNT or would have paid significantly less for the product had he known about the deceptive advertising.

15. Plaintiff Josh Sawyer is a New York resident. He purchased LMNT electrolyte drink mixes from Amazon in August 2024 and January 2025. Plaintiff reasonably relied on Defendant's false and misleading advertisements and would not

have purchased LMNT or would have paid significantly less for the product had he known about the deceptive advertising.

16. Defendant Drink LMNT, Inc. is a Delaware corporation headquartered in Florida, with its principal place of business in Big Sky, Montana. Defendant's products are available through its website, drinklmnt.com, and major retailers like Amazon and Walmart.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendant are citizens of different states and the amount in controversy easily exceeds over $75,000.

18. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and members of the proposed Class are citizens of a different state than Defendant.

19. This Court has personal jurisdiction over Defendant because it committed the deceptive acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum, including by selling and shipping its products to consumers in this District.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

21. Defendant manufactures and distributes powdered electrolyte drink mixes marketed to health-conscious consumers seeking hydration support from natural, sugar-free sources. Defendant claims that LMNT contains no fillers or artificial ingredients.[2]

22. Defendant's "primary target market are health-seeking consumers looking to support their electrolyte needs."[3]

### A. Defendant markets LMNT as consistent with whole-food, paleo, and keto diets, free from highly processed food additives.

23. On its website and marketing materials, Defendant positions LMNT as consistent with a "whole food" diet, which emphasizes natural, whole foods and eschews highly processed foods and additives:



[4]

[2] https://www.sec.gov/Archives/edgar/data/1871551/000187155123000001/lmntc-ar.pdf

[3] *Id.*

[4] https://web.archive.org/web/20220723194413/https://drinklmnt.com/pages/our-story; *see also* https://drinklmnt.com/pages/our-story/?

**Health is a process.**

LMNT co-founder Robb Wolf shares the health journey that sparked a salty rebellion.

**I NEEDED MORE SALT. PERIOD.**

I'd been on a low-carb, whole food diet for years, but something was holding me back. While working with my coaches, we unlocked a powerful insight: I needed more salt. Period.



[5]

24. Defendant also prominently advertises LMNT as "keto" and "paleo" friendly:

[5] https://web.archive.org/web/20221212235804/https://drinklmnt.com/pages/our-story; *see also* https://drinklmnt.com/pages/our-story/?



[6]



[7]

6 https://drinklmnt.com/pages/ingredients/?

7 https://drinklmnt.com/collections/salt/?

25. On its website and marketing materials, Defendant also emphasizes simplicity and transparency, repeatedly stating that LMNT contains "[e]verything you need and nothing you don't," and assuring consumers that the formulation includes "no dodgy ingredients":



[8]



[9]

26. In addition to emphasizing the clean, whole-food nature of LMNT, Defendant prominently highlights what are ostensibly the three primary ingredients in LMNT: sodium (1000 mg), potassium (200 mg), and magnesium (60 mg). Indeed, this "formulation" appears prominently on every box and individual packet of LMNT:

---

[8] https://web.archive.org/web/20250316151718/https://drinklmnt.com/

[9] https://drinklmnt.com/pages/ingredients/?



[10]

27. This emphasis on LMNT's supposed three core ingredients reinforces the impression that the product consists primarily of essential electrolytes and does not contain highly processed fillers or additives incompatible with a whole-food diet.

28. On information and belief, Defendant makes the same or substantially similar representations about LMNT throughout all of its marketing channels, including Amazon.com.

[10] https://drinklmnt.com/products/lmnt-recharge-electrolyte-drink?variant=42281197731863

29. For example, a video on LMNT's Amazon.com page states, "All day energy starts with *clean* hydration."[11] Defendant likewise repeats the statements that LMNT is "paleo-keto friendly" and contains "no dodgy ingredients."[12]

### B. LMNT contains a large amount of maltodextrin, a highly processed food additive.

30. Despite marketing LMNT as consistent with a whole-food diet, keto and paleo friendly, and free from "dodgy ingredients," recent revelations confirm that LMNT contains between of 300 to 450 milligrams of maltodextrin per serving.

31. Maltodextrin is a highly processed carbohydrate derived through an industrial process called hydrolysis, which involves breaking down starches using enzymes or acids, followed by purification and spray drying.[13]

32. Maltodextrin is a refined, high-glycemic sweetener and filler commonly used in processed foods. It has a higher glycemic index than table sugar and can spike blood glucose and insulin levels.[14]

33. The amount of maltodextrin in LMNT exceeds the total amount of potassium and magnesium—two of LMNT's key electrolytes—*combined*. Yet Defendant conceals this fact from consumers by burying maltodextrin in the vague term "natural flavors."

---

[11] https://www.amazon.com/LMNT-Zero-Sugar-Electrolytes-Lemonade/dp/B0F1BSR4VR?ref_=ast_sto_dp&th=1

[12] *Id.*

[13] https://pmc.ncbi.nlm.nih.gov/articles/PMC4940893/

[14] https://www.medicalnewstoday.com/articles/322426#safety-and-side-effects

34. The revelations about LMNT's use of large amounts of maltodextrin came to light in a series of online posts by Defendant's executives. On or about October 19, 2024, Luis Villasenor, one of Defendant's co-founders, posted on X that "LMNT doesn't have maltodextrin":



[15]

35. The next day, another of Defendant's co-founders, Robb Wolf, responded to another post discussing LMNT's use of maltodextrin and admitted that the statement by Luis Villasenor "was clearly a mistake":

[15] https://thebarbellspin.com/fitness/lmnt-caught-up-in-salty-maltodextrin-controversy/


Daniel Tagge, MD @taggemedical · Oct 20
mark the point isn't whether 0.4 g is bad or not. it's about the marketing and deception. and you are willing to just look the other way? how you do anything is how you do everything @robbwolf

1 44 3.3K

Robb Wolf
@robbwolf

.Doc- Luis is a co-founder but is not intimately involved in the day to day, including all raw materials. That post was clearly a mistake and we own that.

Our vendor communicated a 4g maltodextrin amount months ago, but after digging we found that to be inaccurate. We have been nothing but transparent about that and have hired a 20 year Garden Of Life supply chain expert who is also a lawyer. Our goal is to have an airtight accounting for every aspect of supply chain and ingredients.

I appreciate the "how you do everything" sentiment. It's refreshing to know someone who has never made a mistake...we are not at your level yet, our goal is to own the mistake and become better as a consequence.

12:21 PM · Oct 20, 2024 · 24.1K Views

[16]

36. In a subsequent blog post, Wolf disclosed that,

> each stick pack of LMNT's year-round flavored drink mix options contains ~300mg of maltodextrin as the flavor carrier (+/-10% based on stick pack variability). The exact amount depends on the amount of flavor used; Citrus Salt has a bit less natural flavor and thus a bit less maltodextrin, and Mango Chili has a bit more (450mg, +/-10%) due to its higher flavor intensity. The maltodextrin used in LMNT is gluten-free, GMO-free, and derived from corn.[17]

37. Wolf's blog post also read,

> We recognize and honor that LMNT is a companion on many unique health journeys, which is why we're actively working to address concerns raised by folks who are sensitive to maltodextrin (even in small amounts). We know the flavored drink mix doesn't work for everyone,

---

[16] *Id.*

[17] https://science.drinklmnt.com/did-you-know/natural-flavors/

> and offer LMNT Raw Unflavored Drink Mix and LMNT Sparkling as options which do not contain maltodextrin. You can also use this free recipe to make it yourself at home.[18]

**C. Defendant's Representations about LMNT are false and misleading.**

38. Defendant's representations that LMNT is consistent with a whole-food diet are false and misleading.

39. As Defendant explains on its website, "[a] whole foods diet consists of eating foods in their natural state, or as close as possible to it: Fruit, vegetables, meat, fish, nuts, eggs, grains, tubers, legumes, and dairy."[19] Defendant explains that, "[p]rocessed foods — foods that have been altered to be hyperpalatable (AKA unnaturally tasty) or have an extensive list of added ingredients — get the boot."[20]

40. Defendant contrasts a "whole foods diet" with "[t]he Standard American Diet (also called the Western diet)," which is "high in heavily processed foods that are full of refined carbs, sugar, vegetable oils, and food additives."[21]

41. Maltodextrin is a refined carbohydrate and food additive that is produced through industrial processes. Maltodextrin is not naturally occurring in the environment. Because LMNT contains more maltodextrin than two of its three supposed primary ingredients combined, LMNT is fundamentally inconsistent with a whole-food diet, contrary to Defendant's representations.

---

[18] *Id.*

[19] https://science.drinklmnt.com/did-you-know/whole-foods-diet

[20] *Id.*

[21] *Id.*

42. Defendant's representations that LMNT is "keto" friendly are likewise false and misleading.

43. As Defendant has explained, like individuals who adhere to a whole-food diet, "those on a ketogenic diet, [] should be eating mostly meats, fish, eggs, and non-starchy veggies. In other words, whole foods that have a lesser effect on blood glucose and therefore a lesser [blood glucose] impact when displaced."[22]

44. Defendant further explained why foods high on the glycemic index are particularly bad for those on the keto diet:

> A ketogenic diet is, by definition, low in sugar. Keto is a very low-carbohydrate diet. Sugar is a carbohydrate. It makes sense. When you consume sugar, it slams the door on ketosis. At the broad level, here's how that works: 1. Consuming sugar spikes your blood sugar. (Who'd have thought?!) 2. Rising blood sugar stimulates your pancreas to release the hormone insulin. 3. Rising insulin shuts down fat burning and ketogenesis. So sugar isn't the kryptonite of keto because it tastes sweet—it's because eating or drinking it increases blood sugar and insulin levels. And compared to many other carbohydrates, sugar has a high glycemic index. In other words, consuming table sugar causes blood sugar (and subsequently insulin) to rise relatively quickly vs. other carbs. That's because table sugar is a simple carbohydrate. Other carbohydrates (like fiber and sugar alcohols) have smaller glycemic impacts, and are therefore more keto-friendly.

45. As a highly processed carbohydrate, maltodextrin has a higher glycemic index than table sugar, meaning maltodextrin is more likely to produce sharp increases in blood sugar than sugar itself.[23]

---

[22] https://science.drinklmnt.com/low-carb/keto-friendly-sweeteners/

[23] https://www.healthline.com/health/food-nutrition/is-maltodextrin-bad-for-me#nutritional-value

46. For that reason, experts have warned that maltodextrin is fundamentally incompatible with the keto diet.[24]

47. Defendant's representations that LMNT is "paleo" friendly are false and misleading for the same reasons.

48. "A paleo diet is an eating plan based on foods humans might have eaten during the Paleolithic Era."[25] Thus, "[a] modern paleo diet includes fruits, vegetables, lean meats, fish, eggs, nuts and seeds. These are foods that in the past people could get by hunting and gathering."[26] By contrast, "processed foods, grains, legumes, and dairy products" are to be avoided.[27]

49. As a refined carbohydrate and food additive produced through industrial processes, maltodextrin qualifies as a processed food. Because LMNT contains more maltodextrin than two of its supposed primary ingredients combined, LMNT is fundamentally inconsistent with a "paleo" diet, contrary to Defendant's representations.

50. Defendant's representations that LMNT "contains everything you need and nothing you don't," and is free from "dodgy ingredients" are also false and misleading. Maltodextrin has no nutritional value,[28] and research indicates that

---

[24] https://www.healthline.com/nutrition/keto-sweeteners#high-carb-sweeteners; *see also* https://www.medicalnewstoday.com/articles/keto-sweeteners#sweeteners-to-avoid

[25] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/paleo-diet/art-20111182

[26] *Id.*

[27] https://www.ncbi.nlm.nih.gov/books/NBK482457/

[28] https://www.medicalnewstoday.com/articles/322426#safety-and-side-effects

consumption of maltodextrin "leads to the promotion of intestinal inflammation" and "could be a risk factor for chronic inflammatory diseases."[29]

51. Taken together, Defendant's representations about LMNT convey to a reasonable consumer that the product is a clean, whole-food nutritional supplement free from highly processed food additives. Given LMNT's large amounts of maltodextrin, Defendant's representations are likely to mislead reasonable consumers acting reasonably under the circumstances.

52. By marketing LMNT as a clean, whole-food nutritional supplement free from highly processed food additives, all while concealing LMNT's high amount of maltodextrin, Defendant is able to charge a significant price premium. A one-time purchase of a 30-pack of LMNT drink mixes from Defendant's website costs $45.00.[30] This inflated price is not attributable to higher manufacturing costs or demonstrably superior efficacy. Rather it stems from Defendant's marketing strategy, which capitalizes on the desires of health-conscious consumers to avoid highly processed additives.

53. Had Plaintiffs known that LMNT contained more maltodextrin than two of its supposed primary ingredients combined, they would not have purchased LMNT or would have paid significantly less for it.

---

[29] https://pmc.ncbi.nlm.nih.gov/articles/PMC6409436/

[30] https://drinklmnt.com/products/lmnt-recharge-electrolyte-drink?variant=16358367199266

## CLASS ACTION ALLEGATIONS

**54.** Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Class, initially defined as follows:

> All individuals in New York who purchased LMNT electrolyte drink mixes within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

55. Excluded from the proposed Class are Defendant and its parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest.

56. Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

57. The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

58. Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

59. Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other individuals similarly situated pursuant under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity,

commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

60. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

61. **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Class are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the Class includes thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Defendant's records.

62. **Ascertainability.** The Class is ascertainable because its members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control. Plaintiffs anticipate providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

63. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Defendant's marketing claims about LMNT are misleading to a reasonable consumer;

(b) Whether Plaintiffs and the class members were injured and harmed as a result of Defendant's conduct;

(c) Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts; and

(d) Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint.

64. **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of Plaintiffs and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiffs and the putative class members. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

65. **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the class members, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

66. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation, the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**67. Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class

members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 349
### (On Behalf of Plaintiffs and the Class)

68. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

69. NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

70. NY GBL § 349 applies to Plaintiffs and Defendant because the State of New York has an interest in regulating business conduct in the region.

71. Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is

greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

72. Defendant engaged in consumer-oriented conduct by marketing and selling LMNT to consumers, including Plaintiffs and the Class, through its website and other retail channels.

73. The practices employed by Defendant in marketing LMNT are materially misleading and deceptive within the meaning of NY GBL § 349. Defendant's representations about LMNT convey to a reasonable consumer that the product is a clean, whole-food nutritional supplement free from highly processed food additives. Because LMNT contains more maltodextrin than two of its supposed primary ingredients combined, Defendant's representations are likely to mislead reasonable consumers acting reasonably under the circumstances.

74. Plaintiffs and the Class paid a price premium for a product that was deceptively marketed as a clean, whole-food nutritional supplement despite the presence of significant amounts of maltodextrin, a highly processed food additive. Had Plaintiffs known that LMNT contained more maltodextrin than two of LMNT's supposed primary ingredients combined, they would not have purchased the product or would have paid significantly less.

75. Defendant disseminated false and misleading statements throughout New York, which were known, or which by the exercise of reasonable care should

have been known to Defendant, to be untrue and to misleading to consumers, including Plaintiffs and the Class.

76. Plaintiffs and the Class have been injured as a result of Defendant's deceptive acts or practices, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the deceptive advertising.

77. As a result of Defendant's violations of NY GBL § 349, Plaintiffs and the Class seek all available damages, including statutory damages, in addition to reasonable attorneys' fees and costs, and injunctive relief to prevent Defendant from engaging in the unlawful conduct.

## SECOND CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 350
### (On Behalf of Plaintiffs and the Class)

78. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

79. NY GBL § 350 provides, in relevant part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

80. NY GBL § 350 applies to Plaintiffs and Defendant because the State of New York has an interest in regulating business conduct in the region.

81. Any person who has been injured by reason of any violation of NY GBL § 350 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase

the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

82. Defendant engaged in consumer-oriented conduct by marketing and selling LMNT to consumers, including Plaintiffs and the Class, through its website and other retail channels.

83. Defendant's advertising of LMNT is materially misleading and deceptive within the meaning of NY GBL § 350. Defendant's representations about LMNT convey to a reasonable consumer that the product is a clean, whole-food nutritional supplement free from highly processed food additives. Because LMNT contains more maltodextrin than two of its supposed primary ingredients combined, Defendant's representations are likely to mislead reasonable consumers acting reasonably under the circumstances.

84. Plaintiffs and the Class paid a price premium for a product that was deceptively marketed as a clean, whole-food nutritional supplement despite the presence of significant amounts of maltodextrin, a highly processed food additive. Had Plaintiffs known that LMNT contained more maltodextrin than two of LMNT's supposed primary ingredients, they would not have purchased the product or would have paid significantly less.

85. Defendant disseminated false and misleading statements throughout New York, which were known, or which by the exercise of reasonable care should

have been known to Defendant, to be untrue and to misleading to consumers, including Plaintiffs and the Class.

86. Plaintiffs and the Class have been injured as a result of Defendant's false and misleading advertising, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the deceptive advertising.

87. As a result of Defendant's violations of NY GBL § 350, Plaintiffs and the Class seek all available damages, including statutory damages, in addition to reasonable attorneys' fees and costs, and injunctive relief to prevent Defendant from engaging in the unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, pray for relief and judgment against Defendant as follows:

A. certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

B. awarding Plaintiffs and the Class actual damages and statutory damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C. awarding Plaintiffs and the Class exemplary and punitive damages;

D. awarding Plaintiffs and the Class civil penalties;

E. enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

F. awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

G. awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

H. awarding pre-judgment and post-judgment interest; and

I. granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 4, 2025

Respectfully submitted,

*/s/ Raphael Janove*
Raphael Janove
**JANOVE PLLC**
500 7th Ave., 8th Floor
New York, NY 10018
Tel: (646) 347-3940
Email: raphael@janove.law

**ZIMMERMAN REED LLP**
Caleb L. Marker (*pro hac vice forthcoming*)
Ryan J. Ellersick (*pro hac vice forthcoming*)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Email: caleb.marker@zimmreed.com
Email: ryan.ellersick@zimmreed.com