**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Michael Sciortino and Josh Sawyer, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Drink LMNT, Inc.,

Defendant.

No. 1:25-cv-03126

Hon. Judge Hector Gonzalez

**DEFENDANT DRINK LMNT, INC.'S**
**<u>REPLY IN SUPPORT OF ITS MOTION TO DISMISS</u>**

Angela M. Spivey (*pro hac vice*)
Andrew G. Phillips (*pro hac vice*)
Troy A. Stram (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000
angela.spivey@alston.com
andrew.phillips@alston.com
troy.stram@alston.com

Rachel Finkel, Esq.
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
(212) 210-9471
rachel.finkel@alston.com

*Counsel for Drink LMNT, Inc.*

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT AND CITATION TO AUTHORITIES...................................... 2

    A.   Plaintiffs' Claims Are Preempted under Federal Law. .......................... 2

    B.   Plaintiffs Fail to State a Plausible Claim for Relief. .............................. 5

        1.   LMNT's representations would not mislead reasonable consumers. ......... 6

        2.   LMNT's representations are puffery. ........................................... 9

    C.   Plaintiffs Fail to Allege Causation and Injury. ..................................... 11

III. CONCLUSION.................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashour v. Ariz. Beverages USA LLC*,
2020 WL 5603382 (S.D.N.Y. Sept. 18, 2020)..........................................................................4

*Axon v. Citrus World, Inc.*,
354 F. Supp. 3d. 170 (E.D.N.Y. 2018) ...................................................................................3

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 29 (E.D.N.Y. 2015)..............................................................................................5

*Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)....................................................................................................2

*Chimienti v. Wendy's Int'l, LLC*,
698 F. Supp. 3d 549 (E.D.N.Y. 2023) ..................................................................................12

*Critcher v. L'Oreal USA, Inc.*,
2019 WL 3066394 (S.D.N.Y. July 11, 2019), *aff'd*, 959 F.3d 31 (2d Cir. 2020)....................7

*Donadio v. Bayer Healthcare LLC*,
2024 WL 1157044 (W.D.N.Y. Mar. 18, 2024)........................................................................7

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018)............................................................................................1, 3, 6, 9

*Gregory v. ProNAi Therapeutics Inc.*,
757 F. App'x 35 (2d Cir. 2018) ............................................................................................12

*Hicken v. Quaker Oats Co.*,
2024 WL 4953783 (N.D. Ill. Dec. 2, 2024) ...........................................................................6

*Int'l Code Council, Inc. v. UpCodes Inc.*,
43 F.4th 46 (2d Cir. 2022) .........................................................................................9, 10, 11

*Lateef v. Pharmavite LLC*,
2012 WL 5269619 (N.D. Ill. Oct. 24, 2012).......................................................................3, 4

*Leonard v. Abbott Labs., Inc.*,
2012 WL 764199 (E.D.N.Y. Mar. 5, 2012)...........................................................................10

*Lissa Coppola, LLC v. Higbee*,
2020 WL 1154749 (W.D.N.Y. Mar. 10, 2020)...................................................................9, 11

*Quiroz v. Beaverton Foods, Inc.*,
2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019).........................................................................4

*Richburg v. Conagra Brands, Inc.*,
2023 WL 1818561 (N.D. Ill. Feb. 8, 2023) .................................................................7

*Silva v. Smucker Natural Foods, Inc.*,
2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..........................................................3, 4

*Van Holt v. Liberty Mut. Fir. Ins. Co.*,
163 F.3d 161 (3d Cir. 1998).........................................................................................7

*Walcoff v. Innofoods USA, Inc.*,
2023 WL 3262940 (S.D. Cal. May 4, 2023)................................................................8

*Ward v. Pepperidge Farm, Inc.*,
773 F. Supp. 3d 10 (S.D.N.Y. 2025).............................................................................4

*Washington v. Coca Cola Co.*,
2025 WL 2720463 (S.D.N.Y. Sep. 24, 2025)..............................................................10

*White v. Kroger Co.*,
2022 WL 888657 (N.D. Cal. Mar. 25, 2022)..............................................................11

*Wright v. Publishers Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020) ........................................................................12

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
592 F. Supp. 3d 146 (S.D.N.Y. 2022)..........................................................................6

**STATUTES**

FDCA ....................................................................................................................................2, 3

## I.  INTRODUCTION

Knowing their FAC fails to state a plausible claim for relief, Plaintiffs attempt to reposition and embellish their allegations in a desperate bid to survive dismissal. Those attempts fail.

*First*, Plaintiffs' FAC is preempted by federal law because Plaintiffs seek to impose labeling requirements different from or in addition to the federal regulatory scheme. To avoid preemption, Plaintiffs try to reposition their claims as being "predicated on LMNT's *affirmative misrepresentations*," not LMNT's concealment of maltodextrin. Opp. at 8 (emphasis added). Yet despite conceding LMNT's ingredient list complies with federal regulations, Plaintiffs assert state-law claims based on LMNT's labeling that they allege is false and misleading *because* of LMNT's—admittedly FDA compliant—ingredient list. Such allegations seek to impose additional requirements beyond those imposed by federal law and regulations.

*Second*, recognizing LMNT's advertising would not mislead a reasonable consumer, Plaintiffs embellish (and invent new) challenged claims, arguing—without citation or support— that LMNT marketed the Product as "a clean, whole-food supplement free from processed additives." Opp. at 1. To support their fabricated claims, Plaintiffs repeatedly reject LMNT's arguments for dismissal by pointing to the "'entire mosaic' of LMNT's marketing" and pushing their embellished claims as derivative of the alleged "impression" LMNT purportedly creates through its advertising. But that "impression" is nothing more than Plaintiffs' subjective interpretations, inapplicable to assessing whether reasonable consumers would be misled. As explained in LMNT's motion, they would not. Despite Plaintiffs' misdirection, they fail to plausibly rebut LMNT's arguments that the challenged claims would not mislead a reasonable consumer, including because each of the specifically challenged claims constitute nonactionable puffery.

*Third*, Plaintiffs concede that maltodextrin is ***not an "ingredient"*** in the Product, but rather

an "incidental additive" which is not required to be included on the Product's FDA required ingredient list. Plaintiffs' Response therefore fails to rebut LMNT's argument that reasonable consumers understand that some products (like LMNT's drink mixes) contain some incidental additives—like small amounts of maltodextrin as a permitted flavor carrier of the declared "natural flavors"—that do not render the challenged Product labeling or advertising misleading. And because Plaintiffs fail to plausibly allege that any of LMNT's advertising would mislead a reasonable consumer, they fail to allege any injury caused by LMNT's advertising. Contrary to Plaintiffs' urging otherwise, this is one of the cases where the Court "may determine as a matter of law that [the] allegedly deceptive advertisement[s] would not have misled a reasonable consumer." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020). Finally, LMNT's Motion provides additional, independently sufficient bases for dismissal.[1]

## II.      ARGUMENT AND CITATION TO AUTHORITIES

### A.      Plaintiffs' Claims Are Preempted under Federal Law.

As demonstrated by Plaintiffs' Opposition, Plaintiffs' claims are preempted by the FDCA and should be dismissed. Plaintiffs concede the Product's labeling complies with federal regulations, which provide that incidental additives such as maltodextrin need not be disclosed on the Product's ingredients list. *See* Opp. at 9; Mot. at 7–8. Despite this concession, Plaintiffs attempt to sidestep preemption by falsely asserting that they do not seek to "impose new standards or requirements in connection with their consumer protection claims." Opp. at 9 (citation omitted). But Plaintiffs ***do*** seek to impose a duty on LMNT to disclose maltodextrin on the Product's

---

[1] Plaintiffs oppose only a portion of LMNT's Request for Judicial Notice, but (i) Exhibits B and C contain the same information, just in a different format, and Exhibit B should be considered, and (ii) Plaintiffs' allegations of injury make Exhibit D—showing LMNT's refund policy, posted on its website, which both Plaintiffs reviewed prior to their purchases—integral to their claims.

ingredients list—there are a "multitude of allegations in [the] complaint devoted to [LMNT] failing to list [maltodextrin] on its label." *Lateef v. Pharmavite LLC*, 2012 WL 5269619, at \*3 (N.D. Ill. Oct. 24, 2012) (finding state-law claim challenging failure to disclose an incidental additive "seeks to impose a duty" inconsistent with federal regulations). For example, the FAC alleges that "Defendant ***does not disclose*** the presence of maltodextrin on LMNT's packaging, but instead ***conceals*** maltodextrin under the generic ingredient listing of 'natural flavors.'" FAC ¶ 9 (emphasis added); *see also* Mot. at 7–8. Indeed, their entire complaint can be read as based on the "concealment" of maltodextrin—which they now concede was properly omitted from the ingredient list pursuant to federal law. Plaintiffs' efforts to reposition their FAC and "disclaim[] any desire to impose such a duty" on LMNT fail because they "cannot maintain a cause of action that would require [LMNT] to comply with a duty that [is] inconsistent with what the NLEA requires." *Lateef*, 2012 WL 5269619, at \*3 (dismissing complaint alleging failure to disclose the presence of gelatin, an incidental additive in the product at issue, deceived consumers because the "NLEA exempts labeling of 'incidental additives'"). Thus, Plaintiffs' claims are expressly preempted and should be dismissed with prejudice.

Plaintiffs' cited authority does not compel a different result. *See* Opp. at 9–10. ***First***, in both *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d. 170, 174 (E.D.N.Y. 2018) and *Silva v. Smucker Natural Foods, Inc.*, 2015 WL 5360022, at \*1 (E.D.N.Y. Sept. 14, 2015), the plaintiffs challenged "natural" labeling, but as both courts explained, "the FDA has not promulgated any formal rule governing when food products may or may not be labeled 'natural' that would have preemptive effect." *Id.* at \*5; *see Axon*, 354 F. Supp. 3d at 174-75.[2] ***Second***, in Plaintiffs' remaining authority,

---

[2] In *Silva*, the court found an additional claim not preempted, but only because the defendant misidentified an ingredient in a way that rendered the product "misbranded under the FDCA and

the courts analyzed whether "no preservative" or "preservative-free" advertising was preempted. *See Quiroz v. Beaverton Foods, Inc.*, 2019 WL 1473088, at \*1 (E.D.N.Y. Mar. 31, 2019) (challenging "No Preservatives" labeling on product that contained citric acid); *Ward v. Pepperidge Farm, Inc.*, 773 F. Supp. 3d 10, 17 (S.D.N.Y. 2025) (challenging "No Artificial Flavors or Preservatives" labeling on product that contained citric acid); *Ashour v. Ariz. Beverages USA LLC*, 2020 WL 5603382, at \*1 (S.D.N.Y. Sept. 18, 2020) (challenging "preservative-free" advertising of product that contained citric acid). But contrary to Plaintiffs' claims here, those claims posed "no obstacle between state and federal law" because "a claim to remove the label 'No Preservatives' does not conflict with the federal requirement, which only mandates identifying the preservative." *Ward*, 773 F. Supp. 3d at 23. Here, however, each of Plaintiffs' claims ***do*** present an "obstacle between state and federal law" because federal regulations dictate how "[t]he label of a food to which flavor is added ***shall declare the flavor*** in the statement of ingredients": by declaring natural flavor as "natural flavor" and omitting incidental additives. *See* 21 C.F.R. § 101.22(h) (emphasis added). Thus, because each of Plaintiffs' claims are premised on the alleged concealment of maltodextrin on LMNT's ingredient list, they are expressly preempted by federal law, and Plaintiffs' attempt to reposition their FAC as not attacking the purported "conceal[ment of] maltodextrin" (*see* FAC ¶ 9) fails because the law is clear that these advertising-related allegations "cannot save [Plaintiffs'] state law claims." *Lateef*, 2012 WL 5269619, at \*3 (granting dismissal on preemption grounds despite allegations defendant's advertising was misleading). The FAC should be dismissed in its entirety and with prejudice.

---

relevant FDA regulations" such that the plaintiff's claims did not impose additional disclosure requirements in contravention with federal regulations. 2015 WL 5360022, at \*7.

## B. Plaintiffs Fail to State a Plausible Claim for Relief.

Setting aside that Plaintiffs' claims are preempted, Plaintiffs fail to rebut any of LMNT's additional arguments for dismissal. Despite Plaintiffs' fixation on the "entire mosaic" of LMNT's advertising and their purported "impressions" of it, the Court still must "view **each** allegedly misleading statement" in determining whether a reasonable consumer would be misled. *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (emphasis added). And in viewing the statements that **actually** appear in LMNT's advertising,[3] it is clear reasonable consumers would not be misled.

Plaintiffs also fixate on the quantity of maltodextrin in the Product, arguing that "the presence of maltodextrin at levels that exceed the Potassium and Magnesium content is fundamentally at odds with LMNT's marketing claims." Opp. at 13. Despite that assertion, Plaintiffs **concede** that maltodextrin is **not an ingredient** and that it is an incidental additive in the Product (*see* Opp. at 9–10), meaning that Plaintiffs admit, pursuant to federal regulations, maltodextrin is "present in the finished food at insignificant levels and do[es] not have any technical or functional effect in that food." 21 C.F.R. § 101.100(a)(3)(ii)(c); Mot. at 7. Specifically, Plaintiffs **concede** that LMNT properly "omit[s] maltodextrin from the Product's labeling," "do not allege that LMNT must disclose maltodextrin," and disclaim any arguments that LMNT's labels are "inconsistent with federal law" (Opp. at 9–10), thus conceding that maltodextrin is an incidental additive—**not an ingredient**—that "need not be declared in the statement of ingredients." 21 C.F.R. § 101.22(h)(2); Mot. at 7.

---

[3] Plaintiffs argue LMNT "Positions its Product as a clean, whole-foods supplement free from highly processed additives" and "perfectly suited to individuals following 'whole food diets'" (Opp. at 12), but they fail to identify **any location—packaging or otherwise—where** those claims appear. *See generally* FAC.

Accordingly, Plaintiffs' arguments about the quantity of maltodextrin, including its comparison to other non-"technical" ingredients (*see* Opp. at 12–13 n.3), fail to support their claims of deception. As described in Plaintiffs' FAC, maltodextrin is a "flavor carrier"—*i.e.*, a vehicle to carry the properly declared natural flavor ingredient—not an ingredient. *See* FAC ¶ 36.

### 1.     *LMNT's representations would not mislead reasonable consumers.*

***First***, *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), does not support Plaintiffs' position. That case dealt with alleged misleading labeling claims regarding the predominance of grain ***ingredients*** in crackers. But here, Plaintiffs admit maltodextrin is ***not*** an ingredient and does ***not*** need to be listed on LMNT's ingredient list. *See supra*. Thus, they fail to allege that reasonable consumers would be misled by LMNT's highlighting of the three key electrolyte components of the Product. Unlike *Mantikas* and its progeny, there is nothing ambiguous on the Product's label regarding the amount of electrolytes. Instead, it truthfully discloses the amount of each electrolyte component in the Product. And there are no other electrolyte components that appear in greater amounts, unlike in *Mantikas* where Whole Grain was not the predominant grain ingredient. *See id.* at 637. *Kennedy v. Mondelez Global LLC* is not inapposite for the same reasons. 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020). It is immaterial whether the court examined "primary" or "non-dominant ingredients" because Plaintiffs concede maltodextrin is not an ingredient, and as the *Kennedy* court explained: highlighting that the product was "made with real honey" could not support "any of the inferences that Plaintiffs allege are misleading," such as that there were no other "additive[s] in the product." *Id.* And Plaintiffs fail to address the myriad cases supporting that basic proposition—that there is no deception where a front label merely highlights certain ingredients but "do[es] not plausibly guarantee the exclusivity or predominance of an ingredient" or suggest the exclusion of other component parts. *See, e.g.*, *Hicken v. Quaker Oats Co.*, 2024 WL 4953783, at *3 (N.D. Ill. Dec. 2, 2024); *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d

146, 158 (S.D.N.Y. 2022) (citing additional cases for same proposition). Indeed, despite arguing that LMNT "positions its Product as . . . free from highly processed additives," Plaintiffs point to no such claim in any of LMNT's advertising—it does not exist.

**Second**, despite conceding that maltodextrin was properly subsumed within the natural flavors ingredient on the Product's label, Plaintiffs attempt to distinguish the finding in *Richburg v. Conagra Brands, Inc.*, 2023 WL 1818561 (N.D. Ill. Feb. 8, 2023), by arguing that reasonable consumers cannot "infer the presence of maltodextrin" based on the use of natural flavors. Opp. at 16. But the ruling in *Richburg* dispatches that argument because just like the PFAS at issue in *Richburg*, maltodextrin is (i) not an ingredient and (ii) as used an incidental additive, is regulated "differently from traditional food ingredients" by the FDA and not required to be listed on the ingredient list. 2023 WL 1818561, at *7; Mot. at 7. Thus, reasonable consumers would not expect to find incidental additives on the ingredients list of the Product, *see Richburg*, 2023 WL 1812561, at *7, making their ability to infer such irrelevant to Plaintiffs' claims of deception.

**Third,** Plaintiffs' tangential reference to competitors' labeling does nothing to advance their position, nor do Plaintiffs even attempt to respond to LMNT's arguments that the fact some competitors chose to include representations about maltodextrin on their packaging does not support an argument that LMNT's failure to do so is misleading. *See Donadio v. Bayer Healthcare LLC*, 2024 WL 1157044, at *4 (W.D.N.Y. Mar. 18, 2024); Mot. at 19–20. Further, Plaintiffs' vague references to purported and speculative "fallout" fail to support their claims because dissatisfaction with a product "does not establish deception, nor does it transform" the product's labeling into unfair or deceptive conduct. *Critcher v. L'Oreal USA, Inc.*, 2019 WL 3066394, at *5 (S.D.N.Y. July 11, 2019) (citation omitted), *aff'd*, 959 F.3d 31 (2d Cir. 2020); Mot at 19–20. Numerous cases finding that "[m]ere customer dissatisfaction does not constitute consumer fraud"

foreclose Plaintiffs' "fallout" arguments. *See, e.g.*, *Van Holt v. Liberty Mut. Fir. Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998).

*Fourth*, Plaintiffs read *Walcoff v. Innofoods USA, Inc.*, 2023 WL 3262940, at \*9 (S.D. Cal. May 4, 2023) too narrowly and claim it is distinguishable because they "do not base their deceptive advertising claims on the mere presence of carbohydrates." Opp. at 18. But *Walcoff*'s import is not so limited; instead, *Walcoff* shows a plaintiff's subjective "expectation that the Product[]" contains no incidental additives "just because [the Product] contain[s] the word 'keto' . . . [is] implausible" when information on a back label would clarify that expectation. 2023 WL 3262940, at \*9. In *Walcoff*, the back label dispelled the plaintiff's subjective assumption by confirming the product contained carbohydrates. *See id.* Here, the back label dispels Plaintiffs' subjective assumption that the Product is strictly compliant with keto and paleo diets—as opposed to merely "friendly"—by confirming the product contains additional ingredients such as "Citric Acid," "Stevia Leaf Extract" and "Natural [Fruit] Flavors." FAC ¶ 24. Plaintiffs' unsupported assumptions are further dispelled given the practical reality that they purchased a powdered electrolyte mix in single-use packaging, which is not a traditional whole food (as contemplated in keto diets) or a food "humans might have eaten during the Paleolithic Era" (as contemplated in paleo diets). FAC ¶¶ 43, 48.

Further, Plaintiffs incorrectly contend the Product's packaging does not disclose "all the ingredients" in the Product, "[u]nlike in *Walcoff.*" Opp. at 18. But Plaintiffs concede maltodextrin is not an "ingredient" in the Product, and do not challenge the Product's ingredient list as inconsistent with federal regulations. *See supra* at 6–7. And because maltodextrin, an incidental additive, has no "technical" effect on the final Product, its presence alone would not render the Product inconsistent with its keto and paleo "friendly" advertising. *See id.*

*Fifth*, Plaintiffs admit LMNT disclosed the presence of maltodextrin in the Product and

explained how it acted as a flavor carrier **before** either of their purchases. Opp. at 5, 18–19; FAC

¶¶ 14–15. Yet Plaintiffs attempt to downplay that disclosure as insufficient to provide notice of the

Product's use of maltodextrin, *see* Opp. at 18–19, despite both the June and October 2024 posts

appearing on the same part of LMNT's website. *See* Brams Decl., Exhibits A, C.

### 2. *LMNT's representations are puffery.*

To avoid the logical conclusion that LMNT's advertising constitutes subjective statements

of opinion about the Product's superiority—*i.e.*, puffery—Plaintiffs misconstrue the nature of

LMNT's representations.[4] ***First***, Plaintiffs argue "everything you need and nothing you don't" is

"objectively false because LMNT undisputedly does not contain [i] 'everything' consumers need"

or (ii) "'nothing' unnecessary 'to support their electrolyte needs.'" Opp. at 20. But Plaintiffs'

argument that consumers would take this advertisement literally—as opposed to the "exaggerated,

blustering, and boasting statement[]" it is—defies common sense, which reasonable consumers

have. *See id.*; *Lissa Coppola, LLC v. Higbee*, 2020 WL 1154749, at *8 (W.D.N.Y. Mar. 10, 2020).

The flavored electrolyte drink mix (i) does not have water (which ***is*** necessary for consumption)

and (ii) does have flavoring via natural flavors (which reasonable consumers understand is ***not***

necessary for consumption, particularly given LMNT offers an unflavored variety). Indeed, this

claim is "so patently hyperbolic that any allegations that it misled consumers are facially

implausible, thereby making the false advertising claim ripe for dismissal on puffery grounds."

*Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022).

***Second***, Plaintiffs contend "no dodgy ingredients" is not puffery because, according to

---

[4] Plaintiffs confusingly include an argument about the amount of electrolytes in their puffery section. *See* Opp. at 19–20. But that labeling claim is not puffery—it is a truthful disclosure of the amount of sodium, potassium, and magnesium in the Product—which is not misleading for the reasons discussed *supra* at 6–8. And Plaintiffs' predominance/weight arguments make no sense given they conceded maltodextrin is not an ingredient in the product. *See* § II(B)(1), *supra* at 6–8.

Plaintiffs' subjective understanding and a cherry-picked dictionary definition, maltodextrin is "dodgy" Opp. at 20–21. But Plaintiffs admit maltodextrin is ***not*** an ingredient, and as Plaintiffs' own authority explains, the "reasonable consumer test requires more than personal or niche interpretation[s] of the term in question." *Washington v. Coca Cola Co.*, 2025 WL 2720463, at *5 (S.D.N.Y. Sep. 24, 2025). "Dodgy" is not a specific term that would be uniformly understood by objective, reasonable consumers in the same subjective manner Plaintiffs push here. Rather, the claim, taken in context, shows it refers to "nothing specific" and is a "general claim of superiority expressed in broad, vague, and commendatory language." *Int'l Code Council, Inc.*, 43 F.4th at 59–60 (internal quotation marks omitted). And it is not "provably false" just because Plaintiffs include the conclusory allegation that "a critical mass of the target market for LMNT" "consider maltodextrin" to be "dodgy." *See* Opp. at 21. Again, Plaintiffs concede maltodextrin is not an ingredient. And Plaintiffs proffer no support that the mostly anonymous online reviews "set forth a generalized understanding of the term [dodgy]," *Washington*, 2025 WL 2720463, at *5, or contradict the FDA's acknowledgement that maltodextrin is "generally recognized as safe." 21 C.F.R. §§ 184.1(a), 184.1444(c).

***Third***, Plaintiffs argue keto and paleo "friendly" is not puffery because it is "provably false" according to the "specific criteria" the term "friendly" modifies. Opp. at 21. But the term "friendly" offers "nothing specific" about the Product and allows consumers to determine for themselves how to use the Product within their own understanding of keto and paleo diets. *See Int'l Code Council, Inc.*, 43 F.4th at 59–60. Plaintiffs do not—and cannot—identify "specific requirements or standards" that would make the Product not "friendly" with keto and paleo diets because there is no accepted definition about what makes something "friendly" to a specific diet. *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *22 (E.D.N.Y. Mar. 5, 2012) ("[g]eneral

statements about compliance with . . . quality standards" are "non-actionable 'puffery'"). And Plaintiffs' citation to *White v. Kroger Co.*, 2022 WL 888657, at *2 (N.D. Cal. Mar. 25, 2022), is distinguishable because the sunscreen at issue there could ***not*** be friendly to reefs where it damaged—and did not help them—whereas the Product can help support consumers on a paleo/keto diet who need help meeting their electrolyte goals. Moreover, reasonable consumers understand flavored electrolyte powders advertised as "friendly" to certain dietary goals are not strictly compliant or compatible with those diets. *See Lissa Coppola,* 2020 WL 1154749, at *8.

***Finally***, Plaintiffs assert LMNT's claim the Product is "clean" and "perfectly suited for those who adhere to a 'whole food' diet do not constitute mere puffery." Opp. at 22. This strawman fails because Plaintiffs identify nowhere on the Product's packaging or in LMNT's advertising where LMNT makes those claims. *See generally* FAC. Instead, LMNT advertises the Product as "consistent" with a whole foods diet, which, similar to the "friendly" claim, is not measurable and employs "broad" and "vague" language in line with typical puffery claims. *See Int'l Code Council, Inc.*, 43 F.4th at 59–60. But Plaintiffs eschew "consistent," knowing that term is quintessential puffery, choosing instead to attack their fictious "perfectly suited" claim. Opp. at 22. And Plaintiffs' subjective interpretation or "impression" of LMNT's claims are not shared by reasonable consumers, who understand flavored, powdered products are not whole foods, but may be "consistent" with supporting a whole food diet by providing necessary electrolyte supplementation. Like it's "friendly" claims, LMNT's representation of consistency with such a diet represents nonactionable puffery because reliance on the claim by a reasonable consumer is implausible. *Int'l Code Council, Inc.*, 43 F.4th at 60.

### C.     Plaintiffs Fail to Allege Causation and Injury.

Plaintiffs' conclusory and unsupported price premium allegations are insufficient to plausibly allege injury and causation. Plaintiffs do not deny they received the benefit of their

11

bargain in consuming the Product—electrolyte supplementation. Instead, Plaintiffs allege they were disappointed to learn the Product contained an incidental additive. Opp. at 22–23. But contrary to Plaintiffs' assertion, the Court cannot "easily infer the loss suffered by the plaintiffs" because the Product does not lack any of the qualities advertised by LMNT. *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 114–15 (E.D.N.Y. 2020). The Product offers superior hydration using three key electrolytes. Plaintiffs' unreasonable and subjective expectation about the Product, and subsequent disappointment, does not establish an injury sufficient to support their GBL Claims. *See id.* at 115 ("[T]he fact that a product failed to live up to a consumer's individual expectations, standing alone, is insufficient to allege a price premium."). And Plaintiffs fail to allege causation because no reasonable consumer would be misled by LMNT's representations, severing any connection between Plaintiffs' alleged injury and LMNT's representations.[5]

## III.  CONCLUSION

The Court should dismiss Plaintiffs' FAC in its entirety and with prejudice.[6]

---

[5] Plaintiffs' generalized allegation they reviewed LMNT's website does not show they specifically viewed the claim: "everything you need and nothing you don't." *Chimienti v. Wendy's Int'l, LLC*, 698 F. Supp. 3d 549, 557 (E.D.N.Y. 2023) (plaintiffs must allege they "saw the specific advertisements [they] assert were misleading").

[6] The Court should also deny Plaintiffs' single-sentence-footnote request for leave to amend (*see* Opp. at 25 n.6) because it is (i) improper and (ii) offers no proposed amendment to cure the FAC's deficiencies. *Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (affirming dismissal with prejudice where leave to amend was requested in a footnote in plaintiffs' opposition to a motion to dismiss).

Dated: October 28, 2025

Respectfully submitted,

*/s/ Angela M. Spivey*
Angela M. Spivey (*pro hac vice*)
Andrew G. Phillips (*pro hac vice*)
Troy A. Stram (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
angela.spivey@alston.com
andrew.phillips@alston.com
troy.stram@alston.com

Rachel Finkel, Esq.
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
(212) 210-9471
rachel.finkel@alston.com

*Counsel for Defendant Drink LMNT, Inc.*

**CERTIFICATE OF COMPLIANCE**

This document complies with the page limit of Judge Gonzalez's Individual Practices § IV(B)(2)[7] because it contains 12 double-spaced pages, excluding the parts of the document exempted by the Local Civil Rules. This document also complies with the formatting requirements of § IV(B)(2) because this document has been prepared in 12-point font, with double-spaced text and one-inch margins on all sides.

/s/ Angela M. Spivey
Angela M. Spivey (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
angela.spivey@alston.com

*Counsel for Defendant Drink LMNT, Inc.*

---

[7] The Court granted LMNT's unopposed request to exceed the page limit, affording LMNT an additional two pages for this Reply. *See* Dkt. Entry Oct. 23, 2025.

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2025, I caused the foregoing documents to be served upon all counsel of record via the Court's CM/ECF system and email.

/s/ Angela M. Spivey
Angela M. Spivey (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 W. Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
angela.spivey@alston.com

*Counsel for Defendant Drink LMNT, Inc.*