UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL SCIORTINO and JOSH SAWYER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DRINK LMNT, INC.,

Defendant.

**MEMORANDUM & ORDER**
25-CV-3126 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiffs Michael Sciortino and Josh Sawyer, individually and on behalf of all others similarly situated, bring this action against Defendant Drink LMNT, Inc., alleging violations of the New York General Business Law ("GBL") that stem from Defendant's purported misrepresentations concerning and related to the presence of maltodextrin in its product and the product's suitability for certain diets. *See* ECF No. 18 (Amended Complaint; "AC").[1] Defendant moves to dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).[2] *See* ECF No. 24 (Defendant's Motion to Dismiss). For the reasons that follow, Defendant's motion is GRANTED IN PART and DENIED IN PART.

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF"). For the purposes of this Order, this Court uses internal quotation marks in citations to the Amended Complaint to indicate that Plaintiffs are quoting directly from Defendant's website or publications.

[2] Plaintiffs initially sought injunctive relief, *see* AC at 51 ¶ E, but withdrew the request in response to Defendant's motion, *see* ECF No. 26 at 31 n.5 (Plaintiffs' Opposition; "Opp."). Therefore, the Court need not address Defendant's Rule 12(b)(1) motion related to that claim.

## **BACKGROUND**[3]

### I. Relevant Facts

Defendant manufactures, markets, and sells electrolyte drink mixes ("LMNT") through its website and major retailers, targeting health-conscious consumers who are "looking to support their electrolyte needs." AC ¶¶ 1, 16, 21–22. Plaintiffs Sciortino and Sawyer are former customers of Defendant. Sciortino purchased LMNT from Defendant's website in July 2024, *id.* ¶ 14, and Sawyer purchased LMNT from Defendant's website and from Amazon in August 2024 and January 2025, respectively, *id.* ¶ 15. Before making their purchases, Plaintiffs each reviewed Defendant's claims about LMNT on its website and relied on those representations in making their purchasing decisions. *Id.* ¶¶ 14–15.

LMNT is marketed as "consistent with a 'whole food' diet," as well as being "'keto' and 'paleo' friendly." AC ¶¶ 23–24. On its website, Defendant explains what it means to be consistent with the whole food diet or "friendly" to the keto diet. *See id.* ¶¶ 39–44. The "whole foods diet" requires that "'[p]rocessed foods . . . get the boot'" and sits in contrast with "'[t]he Standard American Diet . . . which is 'high in heavily processed foods that are full of refined carbs, sugar, vegetable oils, and food additives.'" *Id.* ¶¶ 39–40. Those following a "keto diet" should eat "'whole foods that have a lesser effect on blood glucose'" because "foods high on the glycemic index are particularly bad for those on the keto diet[.]" *Id.* ¶¶ 43–44. While Plaintiffs say that to adhere to a "paleo diet," "'processed foods, grains, legumes, and dairy products' are to be avoided." *Id.* ¶ 48.

---

[3] The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

Defendant further represents that LMNT "contains '[e]verything you need and nothing you don't,' and assure[s] consumers that the formulation includes 'no dodgy ingredients.'" AC ¶ 25. Each box and individual packet of LMNT "prominently highlights what are ostensibly the three primary ingredients in LMNT: sodium (1000 mg), potassium (200 mg), and magnesium (60 mg)."[4] *Id.* ¶ 26. The front of the product is pictured below.




*Id.* ¶ 9. This, according to Plaintiffs, "reinforces the impression" that LMNT contains mostly electrolytes and no highly processed fillers or additives. *Id.* ¶ 27. But, in fact, LMNT does

[4] Defendant argues that "Plaintiffs improperly dub [sodium, potassium, and magnesium] 'ingredients.'" Mem. at 18. The Court acknowledges that sodium, magnesium, and potassium are "the electrolyte components of sodium chloride, magnesium malate, and potassium chloride," respectively. *See* Mem. at 18–19; AC ¶ 24. For clarity, the Court generally refers to the "ingredients" and their electrolyte components interchangeably but distinguishes between them where the predominance analysis requires the distinction. *See infra* Part II.B.i.3. Specifically, for purposes of the predominance analysis, the Court refers to sodium, potassium, and magnesium as the "Electrolytes" and to sodium chloride, magnesium malate, and potassium chloride as the "Ingredients."

contain such fillers and additives, which Plaintiffs allege those following “whole foods,” “keto,” or “paleo” diets “don’t [need].”

LMNT contains “between 300 to 450 milligrams of maltodextrin per serving,” which is a “highly processed carbohydrate” that is disclosed on LMNT’s label only as part of the term “natural flavors.” *Id.* ¶¶ 30–33. To be precise, maltodextrin is a “refined, high-glycemic sweetener and filler commonly used in processed foods,” which “has a higher glycemic index than table sugar and can spike blood glucose and insulin levels.” *Id.* ¶ 32. It has “no nutritional value, and research indicates that consumption . . . leads to the promotion of intestinal inflammation’ and ‘could be a risk factor for chronic inflammatory diseases.” AC ¶ 50. The amount of maltodextrin contained in each packet of LMNT exceeds that of potassium and magnesium combined, *see id.* ¶ 33, even though the latter two elements are conspicuously advertised on LMNT’s packaging, *see, e.g., id.* ¶ 26.

LMNT’s use of maltodextrin first came to light on October 19, 2024, when Luis Villasenor, one of Defendant’s co-founders, stated on social media that “LMNT doesn’t have maltodextrin.” *Id.* ¶ 34. The next day, Robb Wolf, another co-founder, admitted that LMNT does indeed contain maltodextrin, characterized Villasenor’s statement as a “mistake,” and later disclosed in a blog post on Defendant’s website that each LMNT packet contains approximately “300 mg of maltodextrin.” *Id.* ¶¶ 35–36.

Plaintiffs allege that the strategy of “marketing LMNT as a clean, whole-food nutritional supplement free from highly processed food additives” permitted Defendant to “charge a significant price premium” for LMNT. AC ¶ 52. Plaintiffs allege that, had they known about the quantity of maltodextrin in LMNT, “they would not have purchased LMNT or would have paid significantly less for it.” *Id.* ¶ 53.

### II. Procedural History

Plaintiffs commenced this action on June 4, 2025. *See* ECF No. 1 (Complaint). Approximately two months later, Plaintiffs sought leave to amend their Complaint and filed the amended pleading on August 12, 2025. *See* AC. The Amended Complaint asserts that Defendant engaged in materially misleading and deceptive practices concerning LMNT, in violation of GBL Section 349 (Claim One), and that Defendant's advertising of LMNT was materially misleading and deceptive, in violation of GBL Section 350 (Claim Two). *See id.* On September 11, 2025, Defendant filed its motion to dismiss, *see* Mot., and a memorandum in support of its motion to dismiss, *see* ECF No. 24-1 (Defendant's Memorandum in Support of Motion to Dismiss; "Mem."). About one month later, Plaintiffs filed their opposition. *See* Opp. On October 28, 2025, Defendant filed its reply. *See* ECF No. 28 (Defendant's Reply; "Reply").

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In making this assessment, the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). The Court must, however, disregard any "conclusory allegations, such as formulaic recitals of the

elements of a cause of action." *Iqbal*, 556 U.S. at 678. A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.*

## DISCUSSION

Sections 349 and 350 of the GBL prohibit "deceptive acts or practices" and "false advertising," respectively, "in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." *Orlander v. Staples, Inc.*, 802 F. 3d 289, 300 (2d Cir. 2015). Plaintiffs allege that Defendant violated both sections through (1) its representation that LMNT is keto and paleo diet friendly; (2) its representation that LMNT is consistent with the whole foods diet; (3) its assertions that LMNT is free from "dodgy ingredients" and "contains everything you need and nothing you don't"; and (4) LMNT's allegedly misleading packaging. *See* AC ¶¶ 14–15. Defendant argues that Plaintiffs' claims fail for two reasons: (1) they are preempted by federal law and (2) they fail to state a claim. *See* Mem. at 14. The Court addresses Defendant's preemption argument before turning to its argument that Plaintiffs fail to state a GBL claim. Ultimately, only Plaintiffs' claims concerning the representations that LMNT is keto and paleo friendly, and consistent with the whole foods diet, survive.

### I. Plaintiffs' Claims are not Preempted by Federal Law

Defendant first argues that the Amended Complaint should be dismissed "because Plaintiffs' claims are preempted by federal law[.]" Mem. at 9, 14–17. "[O]nce a district court determines that a state law claim has been completely preempted . . . the court must then dismiss the claim for failing to state a cause of action." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 309 (2d Cir. 2004). Here, however, the claims are not preempted by federal law.

The Federal Nutrition Labeling and Education Act ("NLEA"), a 1990 amendment to the Federal Food, Drug, and Cosmetic Act ("FDCA"), expressly "forbids the states from 'directly or

indirectly establish[ing] . . . any requirement . . . made in the labeling of food that is not identical to' the federal labeling requirements established by certain specifically enumerated sections of the FDCA." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 280 (S.D.N.Y. 2014) (quoting 21 U.S.C. § 343-1(a)). Under the FDCA, a state-law requirement is

> 'not identical to' a federal labeling requirement if 'the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food' that '[a]re not imposed by or contained in,' or that '[d]iffer from those specifically imposed by or contained in,' the FDCA and its implementing regulations.

*Jackson-Mau v. Walgreen Co.*, 115 F.4th 121, 128 (2d Cir. 2024) (quoting 21 C.F.R. § 100.1(c)(4)).

Defendant frames Plaintiffs' claims as an allegation that it concealed the presence of maltodextrin in LMNT and, in turn, an attempt to require that Defendant disclose its use of maltodextrin in the product. *See* Mem. at 15–17. Such claims, Defendant argues, are preempted by federal law because they attempt to "impose[] obligations" that "[d]iffer from those specifically imposed by or contained in the [FDCA]."[5] *See* Mem. at 14 (citing 21 C.F.R. § 100.1(c)(4)). Although the Amended Complaint does allege that Defendant concealed the presence of maltodextrin, *see* AC ¶ 33, contrary to Defendant's contention, Plaintiffs do not seek to impose a requirement that Defendant disclose maltodextrin, nor do they otherwise challenge LMNT's ingredient disclosures, *see* Reply at 6–7. Rather, they assert that (1) the front of LMNT's packaging is misleading because its highlighting of magnesium, potassium, and sodium improperly implies that those components predominate over others, *see* AC ¶¶ 26–27, and (2) Defendant cannot advertise or promote LMNT as being keto or paleo friendly, or consistent

---

[5] Defendant argues, and Plaintiffs do not contest, that Food and Drug Administration ("FDA") regulations permit Defendant to disclose maltodextrin under the general "natural flavors" label on LMNT. *See* Mem. at 15–17; Opp. at 22.

with the whole foods diet, given the presence of maltodextrin in the product*, see id.* ¶ 30; Opp. at 15.

First, the claims arising out of Plaintiffs' allegations that LMNT's label misleadingly implies the predominance of potassium, magnesium, and sodium in LMNT are not preempted because "the NLEA preemption provision does not apply to § 343(a), the prohibition on false or misleading labeling." *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 246 (S.D.N.Y. 2019). But even if it did, Plaintiffs' claims would not be preempted because the alleged deception, that the label misleadingly implies that certain components predominate over others, is parallel to the FDCA's prohibition on food labeling that is "false or misleading in any particular." 21 U.S.C. § 343(a)(1); *see also Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010) ("[C]laims under state laws that parallel the FDCA's requirements are not preempted.").

Second, Plaintiffs' claims based on Defendant's non-packaging related representations—that LMNT is suitable for those following keto, paleo, or whole foods diets; is free from "dodgy ingredients"; and "contains everything you need and nothing you don't"—stem from the allegation that "Defendant's representations about LMNT convey to a reasonable consumer that the product is a clean, whole-food nutritional supplement free from highly processed food additives." AC ¶¶ 105, 115. Here, Plaintiffs are not predicating their claims on Defendant's failure to disclose maltodextrin, but rather on its advertising that LMNT is keto and paleo friendly, and consistent with the whole foods diet. *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 180 (E.D.N.Y. 2018) (finding that plaintiff's claims against "Florida's Natural" brand orange juice were not preempted because plaintiff was "not seeking the mandatory disclosure of glyphosate" but rather the removal of the "natural label"); *see also Jovel v. i-Health, Inc.*,

No. 12-cv-5614, 2013 WL 5437065, at *5 (E.D.N.Y. Sept. 27, 2013) (holding that "consumer protection claims founded on the[] falsity [of statements made in advertising] are not preempted" by the FDCA).

Because Plaintiffs do not attempt to impose additional requirements that contradict the FDCA, their claims are not preempted, and the Amended Complaint survives this part of Defendant's motion to dismiss.

## II. Plaintiffs Sufficiently State Some of Their GBL Claims

Defendant next argues that the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs "fail to plausibly allege LMNT's challenged representations would mislead a reasonable consumer" and "fail to adequately plead essential elements" of GBL Section 349 and 350 claims. *See* Mem. at 14. The essential elements of GBL Sections 349 and 350 are "substantively identical," permitting the Court to analyze the claims together. *See Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007). To state a prima facie claim under the GBL, Plaintiffs must allege that Defendant "has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [P]laintiff[s] suffered injury as a result of the allegedly deceptive act or practice." *Orlander*, 802 F.3d at 300.[6]

The parties do not dispute that "Defendant engaged in consumer-oriented conduct by marketing and selling LMNT to consumers, including Plaintiffs . . . through its website and other retail channels." AC ¶ 104. Therefore, the Court's analysis turns on the remaining two elements.

[6] Although Plaintiffs' claims are based on allegedly deceptive practices, "[c]laims under GBL sections 349 and 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018).

### *A. Injury Resulting from the Deceptive Act or Practice*

#### i. Causation

Defendant argues that Plaintiffs do not adequately plead causation. *See* Mem. at 31–32. To plead causation under GBL Sections 349 and 350, Plaintiffs must allege that they "saw the misleading statements of which they complain before they purchased or came into possession of Defendant's [product]." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020); *see also Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (App. Div. 2004) (affirming dismissal of Section 349 claim because "[i]f the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury").[7] Here, Plaintiffs challenge several of Defendant's representations, but only those that Plaintiffs allege to have viewed can form the basis of their GBL claims.

Relying on *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014), Plaintiffs argue they need only allege that they viewed Defendant's website to satisfy the causation requirement. *See* Opp. at 31. But in *Goldemberg*, the court found the requisite causation where the plaintiff saw the "website and Facebook page *described previously* in the Complaint." *Id.* (emphasis added). The plaintiff in *Goldemberg* "describe[d] in particular the allegedly misleading advertising and other statements" that he viewed on the defendant's website and Facebook page, *id.*, and did not merely rely on vague assertions that he viewed the website generally, as Plaintiffs do here. Plaintiffs cannot simply assert that they

---

[7] Although "reliance is not a required element of a claim under [GBL] Sections 349 and 350, causation is." *Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 6 (S.D.N.Y. 2024); *see also Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941–42 (2012) ("To the extent that the Appellate Division order imposed a reliance requirement on [GBL] §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim.").

"reviewed Defendant's claims on the website" or "saw Defendant's claims about LMNT [on the website]," AC ¶¶ 14–15, as a way to avoid specifying which allegedly misleading statements caused them to make their purchasing decisions. *See Goldemberg*, 8 F. Supp. 3d at 480; *see also Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014).

Therefore, Plaintiffs' claims can be based only on the following statements, which Plaintiffs specifically allege they viewed: "that [LMNT] was paleo and keto friendly, contained no 'dodgy ingredients', and was consistent with a whole-foods diet" and, with respect only to Sciortino, the "advertising on the website showing what [he] believed were LMNT's three primary ingredients: Sodium, Potassium, and Magnesium." AC ¶¶ 14–15.[8] Any other advertisements, statements, or representations discussed in the Amended Complaint, but not specifically identified as viewed by Plaintiffs, do not give rise to a claim.[9] With respect to the actionable representations, both Plaintiffs sufficiently allege causation by asserting that they "relied on Defendant's false and misleading advertisements and would not have purchased LMNT or would have paid significantly less for the product had [they] known about the deceptive advertising." AC ¶¶ 14–15; *see Wise v. Combe Inc.*, 724 F. Supp. 3d 225, 237

---

[8] While Sciortino alleges that he "reviewed advertising on the website," the Court understands him to have viewed images of LMNT's labels and packaging as displayed on the website. *See* AC ¶¶ 9, 23–24, 26. In discussing what Sciortino viewed, the Court simply refers to LMNT's label or packaging.

[9] Plaintiffs also allege that Defendant's statement that LMNT "contains everything you need and nothing you don't" is misleading. *See* AC ¶ 50. But neither Sciortino nor Sawyer alleges to have viewed this statement and therefore it may not form the basis of their GBL claims. *See Lugones*, 440 F. Supp. 3d at 240.

(S.D.N.Y. 2024) (finding plaintiffs' allegations that "they saw the challenged representations . . . prior to and at the time of purchase" sufficient to plead causation).[10]

ii. Injury

Defendant next contends the Amended Complaint fails because Plaintiffs do not plead an actual injury resulting from Defendant's alleged deceptive practices. *See* Mem. at 29–31. Under GBL Sections 349 and 350, injury "typically requires a plaintiff to allege that, on account of a materially misleading practice, [he] purchased a product and did not receive the full value of [his] purchase." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020). This can be shown "by alleging an overpayment, or 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive practice." *Id.* But merely "[c]laiming that the plaintiff would not have bought the product absent the defendant's deception is not enough." *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 363 (E.D.N.Y. 2022).

Plaintiffs advance a standard price premium claim: that Defendant's alleged deception caused them to pay a price premium for LMNT. To sufficiently plead a price premium theory, a "plaintiff must allege not only that defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Duran*, 450 F. Supp. 3d at 350. To allege a sufficient connection, a plaintiff must show "either that because of a misrepresentation the plaintiff received a good worth less than what he paid for,

---

10 Defendant further argues that causation requires that a "reasonably objective person would be deceived by the allegedly misleading statements" and therefore Plaintiffs fail to establish causation. *See* Mem. at 31–32 (citing *Ackerman v. Coca-Cola Co.*, No. 09-cv-395, 2013 WL 7044866, at *19 (E.D.N.Y. July 18, 2013)). But that argument improperly conflates the second and third elements of GBL Section 349 and 350 claims. *See Ackerman*, 2013 WL 7044866, at *19 ("[W]hile materiality and reliance under GBL § 349 are determined based on the objective 'reasonable consumer' standard, loss causation must be addressed individually.") (collecting cases). The Court examines whether Defendant's representations were materially misleading *infra* Part II.B.

*i.e.*, a good of inferior quality, or that because of a misrepresentation the plaintiff paid an inflated price." *Belcastro v. Burberry Ltd.*, No. 16-cv-1080, 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017). With respect to the "inferior goods" basis, courts in this Circuit have found price-premium injury based on inferior goods when "a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *See, e.g., Duran*, 450 F. Supp. 3d at 350 (price premium based on hair gel labeling that promised "no flakes" and collecting cases).

Plaintiffs allege just that. Specifically, Plaintiffs assert that "[b]y marketing LMNT as a clean, whole-food nutritional supplement free from highly processed food additives, all while concealing LMNT's high amount of maltodextrin, Defendant is able to charge a significant price premium" based on "attributes the product does not have." AC ¶¶ 52, 58. Plaintiffs further assert that had they "known that LMNT contained more maltodextrin than two of LMNT's supposed primary ingredients combined, they would not have purchased the product or would have paid significantly less." *Id.* ¶¶ 106, 116. Defendant attempts to paint these assertions as "purely subjective dissatisfaction with the products [Plaintiffs] received." Mem. at 30 (quoting *Wright v. Publ'rs Clearing House, Inc.*, 439 F. Supp. 3d 102, 114 (E.D.N.Y. 2020)). The Court disagrees. Drawing all inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have adequately pled that Defendant was able to charge an inflated price because of LMNT's purportedly unique keto and paleo friendly, and whole foods consistent, qualities, which are valued by consumers, and which Plaintiffs did not discover were absent from the product until after they made their purchases. *See* AC ¶ 58; *Duran*, 450 F. Supp. 3d at 350. The Court, as it has previously, *see Watts v. Beiersdorf Inc.*, No. 24-cv-0527, 2024 WL 5168765, at *3

(E.D.N.Y. Dec. 19, 2024), continues to join "[n]umerous courts in this Circuit [which] have found sufficient a plaintiff's general allegation that [he] would not have paid a price premium but for the defendant's misrepresentations," *see Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 578 (S.D.N.Y. 2021) (collecting cases).

*B. Materially Misleading Conduct*

Defendant also argues that Plaintiffs fail to state a claim because they have not alleged that its representations were materially misleading given that, in relevant part, "LMNT's advertising would not deceive a reasonable consumer" and "[e]ach of the challenged advertisements are non-actionable 'puffery.'" *See* Mem. at 18–29.

As a reminder, the misleading representations at issue are Defendant's statements that LMNT (1) is keto and paleo diet friendly; (2) is consistent with the whole foods diet; (3) contains "no dodgy ingredients"; and, with respect to Sciortino only, (4) the information on the front of LMNT's packaging. *See* AC ¶¶ 14–15. Defendant argues that claims concerning the first and fourth representations should be dismissed because a reasonable consumer could not possibly be misled by them. *See* Mem. at 18–23. Defendant further contends that the claims related to the first, second, and third representations should be dismissed as non-actionable puffery. *See id.* at 23–26. The Court addresses each of Defendant's arguments in turn and finds that Plaintiffs sufficiently plead that only Defendant's first and second statements, concerning LMNT's suitability for keto, paleo, or whole foods diets, are materially misleading.[11]

[11] Defendant lastly argues that "to the extent Plaintiffs assert omission-based claims, they also fail," Mem. at 28, but the Court does not read the Amended Complaint to bring such a claim, nor do Plaintiffs purport to bring one, *see* Opp. at 28 n.4.

i. The Reasonable Consumer

An act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300. In making this evaluation, the Court must determine "whether a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Mogull v. Pete & Gerry's Organics, LLC*, 588 F. Supp. 3d 448, 453 (S.D.N.Y. 2022). Statements or acts should not be viewed in isolation; rather, the Court "assess[es] 'each allegedly misleading statement in light of its context on the product label or advertisement as a whole,' contemplating '[t]he entire mosaic . . . rather than each tile separately.'" *Id.* (quoting *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015)). Ordinarily, this inquiry is a question of fact inappropriate for the motion to dismiss stage. *See Lugones*, 440 F. Supp. 3d at 241. Only where "it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived" is dismissal appropriate. *McCabe v. Nat'l Presto Indus., Inc.*, No. 24-cv-6552, 2025 WL 2371080, at *4 (E.D.N.Y. Aug. 14, 2025) (quoting *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020)); *see also Goetz v. Ainsworth Pet Nutrition,* LLC, 768 F. Supp. 3d 645, 655 (S.D.N.Y. 2025) ("Typically, determining reasonableness as a matter of law is appropriate only where a plaintiff's claims are patently implausible or unrealistic.").

To demonstrate that they satisfy the reasonable consumer standard, Plaintiffs provide anecdotes from third parties as evidence that reasonable consumers would be misled by Defendant's representations. *See* AC ¶¶ 59–85. Defendant argues that Plaintiffs' reliance on these anecdotal statements is insufficient to satisfy the reasonable consumer standard for a GBL claim. *See* Mem. at 27–28. In response, Plaintiffs maintain that the expression of outrage by "[t]housands of LMNT's target consumer base," acknowledged by Defendant, is sufficient to

establish that "targeted consumers for LMNT . . . 'acting reasonably in the circumstances, could be' and were 'misled.'" Opp. at 19 (quoting *Cobovic v. Mars Petcare US, Inc.*, 793 F. Supp. 3d 438, 444 (E.D.N.Y. 2025)). But contrary to Plaintiffs' assertions, "[t]he reasonable consumer standard is an objective standard." *In re Kind LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269, 282 (S.D.N.Y. 2022), *aff'd sub nom. Bustamante v. Kind, LLC*, 100 F.4th 419 (2d Cir. 2024). And "[w]hat is objectively reasonable depends on the facts and context of the alleged misrepresentations[.]" *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 150 N.Y.S.3d 79, 85 (N.Y. 2021). Because the reasonable consumer inquiry is objective and assesses the challenged representation in its full context, the reactions of non-party consumers, without more, do not establish a probability that a significant portion of reasonable consumers would be misled. The Court's analysis on whether a reasonable consumer would be misled by Defendant's representations thus turns on the representations themselves.

1. Keto and Paleo Diet Friendly

Defendant first argues that "Plaintiffs fail to plausibly allege that the inclusion of maltodextrin as an incidental additive under the 'natural flavors' ingredient causes [LMNT] not to be keto or paleo friendly." Mem. at 22. Defendant grounds its argument in the holding in *Walcoff v. Innofoods USA, Inc.*, No. 22-cv-1485, 2023 WL 3262940, at *7–9 (S.D. Cal. May 4, 2023), where the Southern District of California dismissed claims alleging that a product inaccurately represented itself as "keto-friendly" because the packaging clarified any ambiguity as to the amount of carbohydrates and sugar in the product, *see* Mem. at 22. Plaintiffs counter that they do not base their claims on "the mere presence of carbohydrates" but rather allege that LMNT is not keto friendly because "foods high on the glycemic index," in Defendant's words, "'slam[] the door on ketosis,'" and because "maltodextrin is higher on the glycemic index than sugar . . . [it] is fundamentally incompatible with the keto diet, regardless of carbohydrate

content." AC ¶¶ 44–46; *see also* Opp. at 24. Plaintiffs further assert that "because maltodextrin is highly processed—again, independent of its carbohydrate content—it is not paleo 'friendly.'" AC ¶¶ 48–49; Opp. at 24. Although Defendant is legally permitted to disclose the use of "natural flavors" rather than specifying maltodextrin, *see supra* note 5, Plaintiffs had no way of knowing that LMNT contained maltodextrin to inform their analysis of whether the product was keto and paleo diet friendly, *see* Opp. at 24. Contemplating the "entire mosaic" of Defendant's representations and advertising, a reasonable consumer acting reasonably under the circumstances could be misled by Defendant's representations to believe that LMNT was keto and paleo diet friendly when, in fact, it is not.

2. Disclosure of Maltodextrin

More generally, Defendant also argues that no reasonable consumer could be misled because it "publicly disclosed the presence of maltodextrin as a 'flavor carrier' in [LMNT]." Mem. at 23. Defendant initially denied its use of maltodextrin through a social media post on October 19, 2024, stating that "LMNT doesn't have maltodextrin." AC ¶ 34. In a "subsequent blog post," however, Defendant disclosed on its website that LMNT does, in fact, contain maltodextrin. *See id.* ¶ 35. Although the date of that blog post is unclear, from the Amended Complaint's use of the word "subsequent," the Court can infer that the post was made some time after October 19, 2024. *Id.* ¶¶ 36–37. Plaintiffs concede that "a practice is not deceptive when a business provides conspicuous notice of that practice to consumers before purchase." *Carovillano v. Sirius XM Radio, Inc.*, 715 F. Supp. 3d 562, 576 (S.D.N.Y. 2024); *see* Opp. at 24. Here, however, Defendant did not provide such notice to Plaintiffs before their purchases because it was either not timely or not sufficiently conspicuous. Sciortino purchased LMNT in July 2024, and Sawyer purchased it in August 2024 and January 2025, AC ¶¶ 14–15, while Defendant disclosed its use of maltodextrin in October 2024, *see id.* ¶¶ 36–37, indisputably after

at least some of Plaintiffs' purchases. Moreover, as discussed below, although Defendant's notice may have been timely with respect to Sawyer's January 2025 purchase, it was not sufficiently conspicuous because finding the notice would require a reasonable consumer to comb through Defendant's website to identify a single blog post bearing the title, "WHAT'S THE DEAL WITH NATURAL FLAVORS," that does not make clear it disclosed the use of maltodextrin in LMNT. There was thus no conspicuous notice on which Plaintiffs could rely prior to making their purchases. *See Carovillano*, 715 F. Supp. 3d at 576.

Defendant counters that it disclosed the use of maltodextrin in LMNT as early as June 6, 2024, predating Plaintiffs' purchases, and seeks the Court's judicial notice of prior versions of the same blog post referenced in the Amended Complaint. *See* Mem. at 13; ECF Nos. 24-2 (Request for Judicial Notice), 24-5 (Exhibit B – June 2024 Natural Flavors Blog Post; "Ex. B"), 24-6 (Exhibit C – June 2024 Wayback Machine Natural Flavors Blog Post; "Ex. C"). Plaintiffs do not object to Defendant's request that the Court take judicial notice of Exhibit C, *see* Opp. at 12, but object to the Court taking judicial notice of Exhibit B on the grounds that, despite Defendant representing that Exhibits B and C are identical, "a comparison of the language between the two documents indicates they are not the same," *id.* at 13. Plaintiffs further contend that "it is unclear whether Exhibit B was ever posted on the LMNT website." *Id.* Although Defendant represents that Exhibit C was "[t]he June 6, 2024, version of the blog post from Exhibit B," ECF No. 24-2 at 2, it is evident that this is not the case. As Plaintiffs note, "Exhibit C contains a bullet point list of various facts on maltodextrin, including the claim that LMNT contains a 'miniscule amount' of maltodextrin" whereas Exhibit B contains no such text. Opp. at 13. There is thus a "reasonable dispute" as to whether Exhibit B was ever posted on Defendant's website, a fact that cannot "be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). The Court therefore declines to take judicial notice of Exhibit B. The Court does, however, take judicial notice of Exhibit C because Plaintiffs do not object, *see* Opp. at 12, and "the contents of web pages available through the Wayback Machine [are] facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," *Lee v. Springer Nature America, Inc.*, 769 F. Supp. 3d 234, 249 (S.D.N.Y. 2025); *see also Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 443 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."). The Court therefore concludes that July 20, 2024, the date provided by the Wayback Machine, *see* Ex. C at 2, is the earliest date on which the blog post is shown to have appeared.

Although Defendant may have disclosed its use of maltodextrin prior to Plaintiffs' purchases,[12] the Court cannot conclude that such disclosure is conspicuous. A reasonable consumer is not "expected to look beyond misleading representations" in one part of an advertisement "to discover the truth from the ingredient list in small print on the side of the box" or on a website. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018). Here, a single blog post—whose title, "WHAT'S THE DEAL WITH NATURAL FLAVORS," gives no indication of LMNT's use of maltodextrin—is akin to the fine print that, as *Mantikas* cautions, a reasonable consumer cannot be expected to scrutinize when evaluating a product. Consequently, despite Defendant publicizing the presence of maltodextrin in LMNT, that disclosure does not rise to the level of conspicuous notice because it forces a reasonable consumer to "look beyond [the] misleading representations" concerning the product's suitability with keto, paleo, and

---

[12] Sciortino alleges only that he "purchased LMNT from Defendant's website in July 2024," but does not provide a specific date. *See* AC ¶ 14.

whole foods diets that are present in Defendant's advertising "to discover the truth" in a single blog post online. *See Mantikas*, 910 F.3d at 637; *Carovillano*, 715 F. Supp. 3d at 576.

3. The Front of LMNT's Packaging

Defendant next argues that the prominent advertising of potassium and magnesium on the front of LMNT's packaging could not mislead a reasonable consumer, despite the fact that maltodextrin is present in a higher quantity than both of those components combined. *See* Mem. at 21–22. Among other reasons, Defendant asserts that "because Plaintiffs fail to identify any affirmative misrepresentations on [LMNT's] front label, there is no misleading statement to correct or clarify," and that, in any event, LMNT's ingredient list and nutrition facts panel dispel any alleged deception. *See id.* Plaintiffs rely on *Mantikas* to support their argument that LMNT's packaging is misleading because it prominently and improperly implies that LMNT consists primarily of sodium, potassium, and magnesium and, "unlike in *Mantikas*, a reasonable consumer cannot simply flip the package over to dispel the misrepresentation[.]" *See* Opp. at 20–21. The Court disagrees with Plaintiffs and concludes that the packaging was not misleading.

In *Mantikas*, the Second Circuit found that the statements "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" on the front of a Cheez-It box were "misleading because they communicate[d] to the reasonable consumer that the grain in the product [was] predominantly, if not entirely, whole grain" when it was instead "predominantly enriched white flour," as confirmed by the product's nutrition facts panel and ingredients list. 910 F.3d at 637. Courts in this Circuit, applying *Mantikas*, "have concluded that a plaintiff has plausibly alleged a deceptive statement where packaging falsely states or implies that a prominently mentioned ingredient predominates, when, in fact, that ingredient is secondary." *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 78 (S.D.N.Y. 2021) (collecting cases). But, importantly, "[w]hen the ingredients list confirms that the prominently mentioned ingredient does in fact predominate,

courts have concluded that the complaint does not plausibly allege a deceptive statement." *Id.* (collecting cases). And similarly, where the nutrition facts panel of a product clarifies a product's front-label claims, there is no misleading statement under GBL Sections 349 and 350. *See Melendez v. ONE Brands, LLC*, No. 18-cv-06650, 2020 WL 1283793, at *7 (E.D.N.Y. Mar. 16, 2020) (finding the front-label statement "1g sugar" on a protein bar was not misleading because the back-label nutrition facts panel clarified and accurately disclosed the bars' carbohydrate and caloric content).

Here, Plaintiffs make a contention akin to that in *Mantikas*, arguing that "LMNT's prominent claim on the front label that [LMNT] consists of natural electrolytes—Sodium, Potassium, and Magnesium—plausibly leads[s] a reasonable consumer to conclude that natural electrolytes are the predominant ingredients in [LMNT]." Opp. at 20–21. But the "entire mosaic" of LMNT's packaging makes clear that this argument is implausible. Although LMNT's packaging does imply that natural electrolytes predominate, *see Vazquez v. Walmart, Inc.*, 704 F. Supp. 3d 417, 426 (S.D.N.Y. 2023), the nutrition facts and ingredients list confirm that such an implication is not misleading, *see Kamara*, 570 F. Supp. 3d at 78; *Melendez*, 2020 WL 1283793, at *7.

As an initial matter, and as discussed above, *see supra* note 4, there is a distinction between Electrolytes (sodium, magnesium, and potassium) and Ingredients from which those Electrolytes are derived (sodium chloride, magnesium malate, and potassium chloride). But this distinction has no impact on the Court's predominance analysis because both Electrolytes and Ingredients predominate over maltodextrin in LMNT, as revealed by the "entire mosaic" of the labels pictured below.







AC ¶¶ 9, 24.

To begin, the Court looks to the back of LMNT's packaging and analyzes predominance through Defendant's preferred measurement—Ingredients. Doing so clearly shows that Plaintiffs' claims are implausible. FDA regulations require that ingredients "be listed by common or usual name in descending order of predominance by weight on either the principal display panel or the information panel." 21 C.F.R. § 101.4(a)(1). In accordance with that regulation, and uncontested by Plaintiffs, the LMNT ingredients list indicates that the amount of sodium chloride, magnesium malate, or potassium chloride—both individually and collectively—in each packet is greater than the amount of natural flavors (the ingredient containing maltodextrin). *See* AC ¶ 24. It is therefore indisputable that the Ingredients predominate over the amount of maltodextrin in LMNT and thus there is no misleading statement as to their predominance. *See Kamara*, 570 F. Supp. 3d, at 78.

Even looking through Plaintiffs' preferred lens of Electrolytes, their predominance argument remains implausible. As a threshold matter, Plaintiffs' choice of comparison is flawed. Plaintiffs base their comparison on *Mantikas*, but that decision is inapposite to the facts of this case. *Mantikas* specifically contemplated misleading claims regarding the predominance of certain *ingredients* in crackers, as defined by federal regulation. *See* 910 F.3d at 635 (citing 21 C.F.R. § 101.4). Here, however, Plaintiffs do not seek to compare ingredients against ingredients; rather, they compare the components of certain ingredients against the components of other ingredients. But even accepting this framing, their claims still fail.

The Electrolytes in LMNT—sodium, magnesium, and potassium—total 1,260 mg, whereas the most maltodextrin alleged to be in the product is 450 mg. *See* AC ¶¶ 9, 30. Rather than looking to all the Electrolytes displayed on LMNT's packaging, Plaintiffs attempt to cherry-pick what they measure against maltodextrin for the purposes of evaluating predominance. They repeatedly make the point that "[t]he amount of maltodextrin in LMNT exceeds the amount of potassium and magnesium—two of LMNT's key electrolytes—*combined*." *See, e.g.*, *id.* ¶ 33 (emphasis in original). But this omits the amount of sodium in the product, which is prominently highlighted on the packaging next to potassium and magnesium. *See id.* ¶ 9. As Plaintiffs themselves note, *see* Opp. at 20, the Court must look to the "entire mosaic" of Defendant's marketing, *Mogull*, 588 F. Supp. 3d at 453. The Court therefore looks to all three Electrolytes listed on the front—not merely the two that suit Plaintiffs' argument. The Amended Complaint's own figures thus indisputably establish that Electrolytes predominate over maltodextrin in LMNT.

Next, Plaintiffs argue, relying on *Mantikas*, that they could not "simply flip the package over to dispel the misrepresentation" because LMNT's back label does not mention

maltodextrin. *See* Opp. at 21. While this may be true, the back of LMNT's packaging still makes indisputably clear that Electrolytes predominate over maltodextrin. The nutrition facts found on LMNT's back label indicate that in each packet there is "<1 g" of carbohydrates. *See* AC ¶ 24. Plaintiffs themselves allege that "[m]altodextrin is a highly processed carbohydrate." *Id.* ¶ 30. Even taking the label to its logical extreme and assuming that each LMNT packet contains 999 mg of maltodextrin (constituting the entire carbohydrate content of the product), the 1,260 mg of Electrolytes would still predominate. By Plaintiffs' own theory, then, the Electrolytes in LMNT do, in fact, predominate over maltodextrin and there is thus no misleading statement upon which Plaintiffs can base a claim. *See Melendez*, 2020 WL 1283793, at *7.

LMNT's nutrition facts and ingredients list thus confirms that the prominently mentioned components—potassium, sodium, and magnesium—do, in fact, predominate, and, therefore, Plaintiffs fail to plausibly allege a deceptive statement. *See Kamara*, 570 F. Supp. 3d at 78; *see also Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 331–33, 337 (E.D.N.Y. 2018) (dismissing GBL Sections 349 and 350 claims because the back label's ingredients list clarified any confusion caused by the front label "in exactly the spot consumers are trained to look," such that "no reasonable consumer could have been misled"); *Melendez*, 2020 WL 1283793, at *7. Accordingly, any claims arising from this alleged misrepresentation are dismissed.

ii. Puffery

Next, Defendant asserts that its representations that LMNT is keto and paleo diet friendly, consistent with the whole foods diet, and contains "no dodgy ingredients" are puffery and that claims predicated on those statements must be dismissed. *See* Mem. at 23–26. "Statements and practices that are mere puffery are not actionable." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011). The Second Circuit has identified "two types" of

puffery: "(1) subjective statements that cannot be proven true or false . . . and (2) objective statements that can be proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on them." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023). Statements of the former type are often "exaggerations or overstatements that mention nothing specific, but rather amount to general claims of superiority expressed in broad, vague, and commendatory language that are considered to be offered and understood as an expression of the seller's opinion only." *Id.* The second category "involves exaggerated, blustering, and boasting statement[s]" that are "technically provable[,] but upon which no reasonable buyer would be justified in relying." *Id.* Defendant's assertion that LMNT contains "no dodgy ingredients" constitutes the first type of puffery, while the representations that LMNT is keto and paleo diet friendly, and consistent with the whole foods diet do not fit either category and are thus not puffery.[13]

1. "No Dodgy Ingredients"

Defendant first argues that its representations that LMNT contains "no dodgy ingredients" is non-actionable puffery because it uses "confidence as a marketing tool while making subjective representations on which no reasonable consumer would rely." Mem. at 24. The Court agrees. Statements of corporate optimism are non-actionable puffery. *See Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 359 (S.D.N.Y. 2022) (Defendant's representation

---

[13] The parties also dispute whether the statement "everything you need and nothing you don't" is puffery. *See* Mem. at 24–25; Opp. at 26. But, as discussed above, the only allegedly misleading representations that Plaintiffs claim to have viewed are (1) that LMNT is keto and paleo diet friendly; (2) that LMNT is consistent with the whole foods diet; (3) that LMNT contains "no dodgy ingredients"; and (4) the front of LMNT's packaging. *See supra* Part II.A; AC ¶¶ 14–15. Accordingly, Plaintiffs may not rely on Defendant's assertion that LMNT contains "everything you need and nothing you don't" as a basis for their claims and the Court therefore does not address it.

that its product was "among the highest quality Canadian down available" was non-actionable puffery); *see also Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 367 (S.D.N.Y. 2021) ("The claim that a product is safe generally . . . is puffery because it conveys only a general term[] of quality, not specific characteristics."); *Matter of Sundial Growers, Inc. Sec. Litig.*, 138 N.Y.S.3d 330, 330 (1st Dep't 2021) (concluding that statements in offering materials related to "high quality" and "premium" products were non-actionable puffery or, in the alterative, nonactionable opinion). The representation at issue—that LMNT contains "no dodgy ingredients"—similarly constitutes only a vague expression of corporate optimism about LMNT, nothing more.

Courts outside of the Second Circuit have also held that similar representations are non-actionable puffery. In *Walcoff*, which both parties discuss extensively in their analysis of the keto diet, the Southern District of California found that "no funny stuff" was non-actionable puffery because it did not describe specific or absolute characteristics of a product but rather involved "generalized, vague, and unspecified assertions." 2023 WL 3262940, at *9 n.11. Here, "no dodgy ingredients" is no different. It provides a "generalized, vague, and unspecified assertion" about LMNT on which no reasonable consumer could rely.

To support their argument that "no dodgy ingredients" is, in fact, actionable, Plaintiffs argue that courts within the Second Circuit consult dictionary definitions when evaluating how a reasonable consumer would interpret a term, *see Washington v. Coca Cola Co.*, No. 25-cv-1916, 2025 WL 2720463, at *3 (S.D.N.Y. Sept. 24, 2025), and cite to the Merriam Webster Dictionary to define "dodgy," *see* Opp. at 26–27 (defining "dodgy" as "not sound, good, or reliable" and "questionable, suspicious"). In *Washington*, the court looked to definitions of "soda water" and "flavors" in determining that a reasonable consumer would understand that achieving the latter necessarily requires adding ingredients to the former. *See Washington*, 2025 WL 2720463, at *4.

But those words have definite and ascertainable meanings against which a label can be tested. Here, Plaintiffs argue that the definition of "dodgy"—"not sound, good, or reliable" and "questionable, suspicious"—provides the same clarity. *See* Opp. at 26–27. It does not. Rather, these definitions reinforce the vagueness of the term. Unlike "flavors," which denotes identifiable ingredients added to change the taste of "soda water," here, the term "dodgy" does not identify any ingredient, quality, or characteristic that can be objectively verified. Instead, it constitutes a "[s]ubjective claim[] about [LMNT], which cannot be proven either true or false." *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 59 (2d Cir. 2022). A reasonable consumer therefore could not determine from the phrase "no dodgy ingredients" which ingredients qualify as "dodgy" or how that statement could be objectively verified.

Plaintiffs also rely on *In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, No. 23-cv-1186, 2024 WL 4107244, at *6 (E.D.N.Y. Sept. 6, 2024), to support their argument that "no dodgy ingredients" is not puffery. *See* Opp. at 27. There, the court held that the phrase "expertly crafted with the finest ingredients" and the word "excellence" were not puffery because, viewed in the context of the packaging as a whole, "a reasonable consumer could interpret Lindt's statements as representations about the quality of the chocolate's ingredients, and, more specifically, an absence of lead." *Id.* No comparable representation exists here. As discussed above, "dodgy" is a subjective characterization that names no ingredient and implies no ascertainable condition against which its truth could be tested, and nothing in the packaging supplies one. Unlike the lead contamination at issue in *Lindt*, Plaintiffs identify no contaminant or unsafe substance that "no dodgy ingredients" could plausibly be read to exclude. Nor does the phrase "no dodgy ingredients" imply the absence of maltodextrin. And Plaintiffs likewise do not plausibly allege that maltodextrin is itself "dodgy," as opposed to a permitted natural flavoring

component. Unlike *Lindt*, no reasonable consumer could interpret "no dodgy ingredients" to be a representation about LMNT's quality or safety.

Plaintiffs' allegations about Defendant's representation that LMNT contains "no dodgy ingredients" amount only to puffery, and the claims arising thereunder are dismissed.

2. Keto and Paleo Diet Friendly; Consistent with a Whole Foods Diet

The parties' next arguments center around the use of the "friendly" and "consistent" qualifiers and whether keto, paleo, and whole foods diets are quantifiable. *See* Mem. at 25–26; Opp. at 27–28. Defendant argues that the "friendly" modifier constitutes non-actionable puffery insofar as it relates to keto and paleo diets because it is "a subjective assessment of [LMNT] not tied to any objective standard." *See* Mem. at 25. Defendant further argues that "[b]ecause the 'friendly' claims are '[g]eneral statements about compliance with . . . quality standards' and 'fail to identify specific requirements or standards,' they constitute 'non-actionable puffery.'" *Id.* (quoting *Leonard v. Abbott Labs, Inc.*, No. 10-cv-4676, 2012 WL 764199, at *22 (E.D.N.Y. Mar. 5, 2012)). Defendant makes a similar argument that being "consistent" with a whole foods diet is not measurable. *See* Mem. at 26. Plaintiffs dispute this characterization, arguing that where the term "'friendly' modifies terms with specific criteria, the phrase does not constitute puffery." Opp. at 27 (citing *White v. Kroger Co.*, No. 21-cv-08004, 2022 WL 888657, at *2 (N.D. Cal. Mar. 25, 2022) ("Where a reasonable inference exists that consumers may be looking for sunscreen products that are not damaging to reefs, however, 'reef friendly' may reasonably be understood as implying defendants' products meet those criteria.") and *Valentine v. Crocs, Inc.*, No. 22-cv-07463, 2023 WL 12015530, at *5 (N.D. Cal. Apr. 28, 2023)).

As in *White*, here, the Court concludes that consumers following keto, paleo, and whole foods diets may be looking for products that comport with their particular choice of diet and, therefore, keto and paleo diet "friendly" and "consistent" with a whole foods diet may

reasonably be understood to imply that LMNT meets the relevant criteria. *See* 2022 WL 888657, at *2. To that end, Plaintiffs have identified the following criteria: (1) substances high on the glycemic index, such as maltodextrin, are fundamentally incompatible with the keto diet because they spike blood sugar levels, *see* AC ¶¶ 42–46; (2) a paleo diet requires an avoidance of highly processed food, which maltodextrin is considered to be, *see id.* ¶¶ 48–49; and (3) whole foods diets are those that exclude processed foods, of which maltodextrin is a variety, *see id.* ¶ 39–41. Unlike in *Washington*, each criterion above is anchored to readily ascertainable measurements or concepts: for the keto diet, blood sugar levels are measurable, and for the paleo and whole foods diets, processed foods are identifiable. These "standards" are sufficient at the motion to dismiss stage to establish that Defendant's representations with respect to LMNT's alignment with keto, paleo, and whole foods diets are actionable under the GBL.

With respect to LMNT's purported consistency with the whole foods diet, Defendant further argues that such a representation is puffery because Defendant never represented that LMNT is strictly compatible with such a diet, and reasonable consumers would understand that powdered, single use packets do not constitute a "whole food." *See* Mem. at 26. But nowhere in the Amended Complaint do Plaintiffs assert that LMNT is "strictly compatible" with a whole foods diet. As to the second part of the argument, Defendant is effectively maintaining that its representation constitutes the second type of puffery—an "objective statement[] that can be proven true or false but [is] so exaggerated that no reasonable buyer could justifiably rely on [it]." *See MacNaughton*, 67 F.4th at 96. Defendant's own words belie this argument. As Plaintiffs note, Defendant's advertising explains that to be consistent with a whole foods diet requires that "[p]rocessed foods . . . get the boot." Opp. at 28; AC ¶ 39. To be "consistent" means to be "free from variation or contradiction." *Consistent*, Merriam-Webster Dictionary,

https://www.merriam-webster.com/dictionary/consistent [https://perma.cc/7QZY-BTDF] (last visited August 14, 2026). By describing a whole foods diet as one that eschews processed foods and subsequently representing LMNT as "consistent" with such a diet, Defendant represents that LMNT is "free from variation or contradiction" with a whole foods diet. The presence of maltodextrin, a highly processed component, in LMNT is clearly a "variation or contradiction" from the whole food diet, meaning that LMNT is inconsistent with the diet's principles. Given this, a reasonable consumer could understand Defendant's representations to mean that LMNT does not contain processed ingredients. Although Defendant's argument that a reasonable consumer would understand that a powdered, flavored electrolyte drink mix served in single-use packets to not be a "whole food," *see* Mem. at 26, is well taken, it is not "patently implausible or unrealistic" for a reasonable consumer to understand Defendant's whole-foods-diet-consistent representation in that way, *see Goetz*, 768 F. Supp. 3d at 655, in part because Defendant produces an unflavored version of its drink mix that does not contain maltodextrin, *see* AC ¶ 37. Defendant's representation concerning LMNT's consistency with a whole foods diet is therefore actionable under the GBL.

* * *

Only Plaintiffs' claims based on two of the challenged representations survive Defendant's motion to dismiss: (1) that LMNT is keto and paleo friendly and (2) that LMNT is consistent with the whole foods diet. The remainder of Defendant's representations are non-actionable, and any claims based upon them are dismissed. Specifically, the claims based on Defendant's statement that LMNT contains "no dodgy ingredients" are dismissed as that statement is non-actionable puffery, and the claims based on allegations that the front of LMNT's label is misleading are dismissed because no reasonable consumer could be misled by

such representations. Claims based on the other representations—those stemming from Plaintiffs' general review of Defendant's website, including that LMNT has "everything you need and nothing you don't"—are dismissed because Plaintiffs fail to allege that they viewed them before making their purchasing decisions. Plaintiffs' GBL claims therefore partially survive Defendant's motion to dismiss. *See Colpitts*, 527 F. Supp. 3d at 581 n.9 (sustaining GBL Sections 349 and 350 claims based on one alleged misrepresentation without reaching plaintiff's separate theory based on a separate misrepresentation).

**III. Leave to Amend**

In the final line of their Opposition, Plaintiffs seek leave to file a second amended complaint to "address[] any deficiencies identified by the Court." *See* Opp. at 31 n.6. Defendant opposes Plaintiffs' request, arguing that doing so in a footnote is improper and that Plaintiffs "offer[] no proposed amendment to cure the Amended Complaint's deficiencies." Reply at 17 n.6. The Second Circuit has held that courts may deny leave to amend where, as here, "the request was made only in a footnote of [P]laintiff[s'] opposition to [D]efendant['s] motion to dismiss and where [P]laintiff[s] provided no explanation regarding how the complaint's defects would be cured." *Food Holdings Ltd. v. Bank of America Corp.*, 423 F. App'x 73, 76 (2d Cir. 2011); *see also Harris v. Mondelēz Global LLC*, No. 19-cv-2249, 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) (denying leave to amend GBL claims because plaintiff "offer[ed] no explanation of what new allegations might be added"). This alone is sufficient to deny leave to amend.

In any event, the Court finds that leave to amend would be futile. While leave to amend "shall be freely given when justice so requires," Fed.R. Civ. P. 15(a), it "should be denied if it would be futile," *Thompson v. Racette*, 519 F. App'x 32, 34 (2d Cir. 2013). Leave to amend is

futile where the "problem with [Plaintiffs'] causes of action is substantive [and] better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Because the Amended Complaint already sets forth Plaintiffs' factual allegations and claims based on Defendant's representations that LMNT contains "no dodgy ingredients" and the front of LMNT's label in detail, and the papers do not suggest that Plaintiffs could plead new facts to overcome the deficiencies identified above, leave to amend is futile. *See Thompson*, 519 F. App'x at 34. Moreover, Plaintiffs "ha[ve] had multiple opportunities to allege sufficient specific facts to render [their] claims plausible, including in [their original complaint and] the Amended Complaint."[14] *See Williams v. Calderoni*, No. 11-cv-3020, 2012 WL 691832, at *8 (S.D.N.Y. Mar. 1, 2012). "[L]eave to amend would be futile because [P]laintiff[s] ha[ve] already had two bites at the apple and they have proven fruitless." *Harris v. Westchester Cnty. Med. Ctr.*, No. 08-cv-1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011). The Court therefore denies Plaintiffs leave to amend.

**CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss Plaintiffs' Amended Complaint is GRANTED IN PART and DENIED IN PART. The Court DENIES Defendant's motion as to Plaintiffs' claims insofar as they rest on representations that LMNT is suitable for those following keto, paleo, and whole foods diets and GRANTS the motion as to Plaintiffs' claims insofar as they rely on the remaining representations. *See Colpitts*, 527 F. Supp. 3d at 581

---

[14] The Court granted Plaintiffs leave to file the Amended Complaint "to address the issues raised in Defendant's pre-motion letter," July 29, 2025, Text Order, which included that the challenged statements (1) would not mislead a reasonable consumer and (2) are non-actionable "puffery," *see* ECF No. 15 at 2–3. Despite the "opportunity [to amend the Complaint], Plaintifff[s] ha[ve] failed to cure any deficiencies identified by . . . Defendant[]." *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 408 n.26 (E.D.N.Y. 2018).

n.9. Specifically, the Court dismisses the following with prejudice pursuant to Rule 12(b)(6) for failure to state a claim: the portion of Plaintiffs' claims based on Defendant's representation that LMNT contains "no dodgy ingredients" because it is non-actionable puffery; the portion of the claims based on allegations that the front of LMNT's packaging is misleading because no reasonable consumer could be misled; and the portion of Plaintiffs' claims based on the remainder of the challenged representations because Plaintiffs fail to allege that they viewed them prior to making their purchasing decisions. Defendant's Rule 12(b)(1) motion is DENIED as moot because Plaintiffs withdrew their request for injunctive relief. *See* Opp. at 31 n.5.

In light of the limited nature of the claims that remain as a result of this Order, the Court refers this case to the District's Court-Annexed Mediation Program. The parties shall select a mediator by September 14, 2026, and complete their mediation by October 13, 2026.[15] The parties shall file a letter with the Court on or before September 15, 2026, confirming that they have selected a mediator and shall file another letter with the Court on or before October 14, 2025, confirming that they have completed mediation. If mediation is unsuccessful, the Court

---

[15] The Court reminds the parties that once it "determine[s] that a case is appropriate for mediation," it may "order that case to mediation, with or without the consent of the parties." *See* Local Civil Rule 83.9(e)(3). For the reasons set forth above, the Court concludes that this case is appropriate for mediation, and it will not entertain requests to avoid those provisions of this Order. In the event any party is unable or unwilling to pay the mediator's fee, that party may apply for a fee waiver, pursuant to Local Civil Rule 83.8(f)(1). Any party requesting such waiver shall provide information and supporting documentation to show the financial hardship associated with paying for mediation services by August 31, 2026.

will likely refer the case to the Honorable James R. Cho for a settlement conference and, thereafter, lift the discovery stay if necessary.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
August 14, 2026